[No. 45247.   En Banc.   August 16, 1979.]

LANA OHLER, *Appellant,* v. TACOMA GENERAL HOSPITAL, ET AL, *Respondents.*

*Sullivan, Morrow & Longfelder,* by *Daniel F. Sullivan* and *Kerry D. Kidman,* for appellant.

*Billett, Comfort & Rosenow,* by *Jack G. Rosenow* and *Beverly J. Rosenow,* for respondent Tacoma General Hospital.

*Detels, Draper & Marinkovich,* by *Eric L. Freise,* for respondent Air Shields, Inc.

*Joel D. Cunningham* and *Thomas H. Fain* on behalf of Air Reduction Co., amici curiae.

BRACHTENBACH, J.—Plaintiff Lana Ohler appeals from summary judgments in favor of defendants Tacoma General Hospital and Air Shields, Inc. The trial court ruled that Ohler's medical malpractice and products liability claims were barred by statutes of limitation. We reverse.

Lana Ohler was born 2 months prematurely at Tacoma General Hospital on February 16, 1953. Because of her prematurity, she was placed in an incubator for about 16 days and given oxygen. Lana alleges that the incubator was manufactured by Air Shields. Shortly after Lana was discharged from the hospital, her mother discovered that Lana

was blind. Lana was diagnosed as suffering from retrolental fibroplasia (RLF).

RLF is the formation of opaque tissue behind the eye lens. During the 1940's and early 1950's, RLF allegedly blinded a large number of premature infants. It is said that scientific research later established as its cause excessive concentrations and administration of oxygen in the first few days of the infant's life. *See generally* Arnold, *Retrolental Fibroplasia (RLF): History and State of the Art,* 1977 Med. Trial Tech. Q. 297.

From a very early age, Lana knew that her blindness resulted from "too much oxygen to [her] eyes." However, she claims that she always believed that the oxygen had been properly administered, that it was necessary for her treatment as a premature baby, and that blindness was a complication of her prematurity.

In the fall of 1974, when she was 21 years old, Lana heard through the news media that a school friend, who also suffered from RLF, had initiated a lawsuit alleging that her blindness had been caused by the wrongful conduct of a hospital and an incubator manufacturer, Air Shields, Inc. Within a week, Lana contacted her friend's attorney and in her affidavit said that she "discovered for the first time that it was possible that [she] did not need as much, if any, oxygen as was actually administered to [her] in [her] infancy and that [her] sightlessness might have been prevented." In March 1975, shortly after her 22nd birthday, Lana commenced this lawsuit.

## I

The statute of limitation governing appellant's medical malpractice action against Tacoma General Hospital provides:

> Any civil action for damages . . . against:
>
> . . .
>
> . . . a hospital . . . based upon alleged professional negligence shall be commenced within . . . one year of the time the patient . . . discovered . . . that the injury or condition was caused by said act . . .

RCW 4.16.350. The statute was amended in 1975, but the amendment applies only to health care provided after June 25, 1976, and is not relevant here.

The trial court granted respondent Tacoma General's summary judgment motion by ruling that appellant had not commenced her action within 1 year of her discovery that her blindness may have resulted from Tacoma General's wrongful conduct. It ruled that Lana discovered Tacoma General's "wrongful act" when first she learned that her blindness was due to excess oxygen given during her infancy incubation, even though she then may not have realized that the oxygen administration was tortious. Since Lana had known from an early age that she was blinded from "too much oxygen," the trial court ruled that the 1–year statute of limitation began to run against Lana's claim when she turned 18 years old, the age of majority in this state. *See* RCW 4.16.190. Since Lana did not commence her lawsuit until she was 22 years old, the trial court dismissed her suit as time barred.

The issue here, therefore, is whether the trial court correctly formulated and applied RCW 4.16.350's 1–year discovery rule. The correct formulation of the discovery rule poses a question of law, but the application of the rule presents a question of fact. 5A L. Frumer, *Personal Injury: Actions, Defenses, Damages* § 4.03(3)(d)(iii), at Phy–386, 387 (1977).

The trial court erred as a matter of law when it ruled that appellant's cause of action accrued when she "discovered" the cause of her blindness ("too much oxygen"), even if no fault on the tort–feasor's part then was apparent. This formulation of RCW 4.16.350's 1–year discovery rule omits an essential element of a negligence cause of action: respondent's breach of duty. W. Prosser, *Torts* § 30, at 143 (4th ed. 1971). She knew the alleged act, administration of oxygen, and she knew the result, blindness, but there is a factual issue whether she knew or should have known that the result was a breach of the hospital's duty. We refuse to hold as a matter of law that knowledge

received at age 4 imparts to that child a realization that administration of "too much oxygen" did or may have constituted a breach of duty.

We hold that appellant's claim against Tacoma General did not accrue until she discovered or reasonably should have discovered all of the essential elements of her possible cause of action, *i.e.,* duty, breach, causation, damages. Our holding accords with rulings on malpractice claims under the Federal Tort Claims Act by the United States Courts of Appeal for five circuits. *DeWitt v. United States,* 593 F.2d 276 (7th Cir. 1979); *Kubrick v. United States,* 581 F.2d 1092, 1096–97 (3d Cir. 1978); *Exnicious v. United States,* 563 F.2d 418, 420 (10th Cir. 1977); *Bridgford v. United States,* 550 F.2d 978, 981–82 (4th Cir. 1977); *Jordan v. United States,* 503 F.2d 620, 622 (6th Cir. 1974). *See also Brown v. Mary Hitchcock Mem. Hosp.,* 378 A.2d 1138 (N.H. 1977) and *Lopez v. Swyer,* 62 N.J. 267, 300 A.2d 563 (1973).

As a separate issue, the trial court erred when it granted Tacoma General's summary judgment motion. Under CR 56(c), summary judgment is available only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." The material submitted for and against the summary judgment motion is considered in the light most favorable to appellant, the nonmoving party. *Marino Property Co. v. Port of Seattle,* 88 Wn.2d 822, 824, 567 P.2d 1125 (1977); *Morris v. McNicol,* 83 Wn.2d 491, 495, 519 P.2d 7 (1974). Respondent, Tacoma General, the moving party, has the burden initially to prove by uncontroverted facts that no genuine issue of material fact exists. *LaPlante v. State,* 85 Wn.2d 154, 158, 531 P.2d 299 (1975).

A "material fact" is one on which the litigation's outcome depends. *Jacobsen v. State,* 89 Wn.2d 104, 108, 569 P.2d 1152 (1977). The outcome–determinative fact here is the timing of appellant's discovery of all the elements of her possible cause of action against Tacoma General.

We are not persuaded that the record supports the conclusion that "no genuine issue" exists about this material fact. At best, Tacoma General points to appellant's deposition statements that she knew from childhood that her blindness was caused by "too much oxygen" and that possibly she may have been told about RLF while she was a student at the State School for the Blind. It does not present uncontroverted facts to dispute Lana's claim that she was unaware of the "wrongful" amount of oxygen given her as an infant. Resolving all inferences arising from Lana's affidavit and deposition most favorably to her, *Balise v. Underwood,* 62 Wn.2d 195, 199, 381 P.2d 966 (1963), it must be said that reasonable persons can differ about when Lana discovered that her blindness may have been caused by Tacoma General's wrongful acts. *Yerkes v. Rockwood Clinic,* 11 Wn. App. 936, 941–42, 527 P.2d 689 (1974). A genuine issue of material fact exists and its resolution should be left to the trier of fact.

Respondent Tacoma General, however, relies particularly on *Brown v. United States,* 353 F.2d 578 (9th Cir. 1965). *Brown,* like *Quick v. Aetna Cas. & Sur. Co.,* 347 So. 2d 59 (La. Ct. App.), *review denied,* 350 So. 2d 889 (1977), involved a medical malpractice claim for RLF blindness and barred the claim by statute of limitation.

The two cases are not persuasive here. First, in both cases, the parents of RLF children, and not the children themselves, brought suit. While appellant's parents may have had enough knowledge about RLF to know constructively of its possible wrongful cause, their actual or constructive knowledge cannot be imputed to Lana who is the sole plaintiff in this case. If the negligence of a parent is not imputed to a child, as it is not, knowledge of the parent about a possible cause of action should not be imputed to the child, at least absent communication to the child. *Vioen v. Cluff,* 69 Wn.2d 306, 418 P.2d 430 (1966). *Cf. O'Brien v. Woldson,* 149 Wash. 192, 195, 270 P. 304, 62 A.L.R. 436 (1928). Second, the record here does not demonstrate manifestly that RLF and its possible wrongful causes were ever

explained fully to Lana, as they were explained to the parents–plaintiffs in *Brown* and *Quick.*

## II

The statutes of limitation governing appellant's product liability action against Air Shields, Inc., are RCW 4.16.010 and RCW 4.16.080(2). They apply generally to a personal injury action and require the commencement of the action within 3 years after the cause of action accrued.

The trial court ruled that a products liability action accrues when a plaintiff discovers her injury and the product as its cause. However, it then ruled that appellant's action was time barred because she "had discovered all the facts necessary to start the statute of limitation running against her cause of action against Air Shields, Inc., by the time of her eighteenth birthdate." The issue here, therefore, is twofold: whether the discovery rule extends to a products liability action and, if it does, whether the rule was formulated and applied correctly by the trial court.

We believe the trial court properly extended the discovery rule to products liability cases. We have approved similar extensions of the rule in the past.

In *Ruth v. Dight,* 75 Wn.2d 660, 453 P.2d 631 (1969), we approved the use of the discovery rule for medical malpractice cases governed by the 3–year limitation period of RCW 4.16.010 and 4.16.080(2). We interpreted the statutes by saying at page 666 that

> in reading RCW 4.16.010, as it speaks of the accrual of a cause of action, along with subsection RCW 4.16.080(2), prescribing the kind and classes of actions which are limited to 3 years, *i.e.,* actions "for any other injury to the person or rights of another," we note that the time fixed for calculating the accrual of the cause of action becomes general instead of specific, and could as readily be said to commence with the reasonable discovery of the injury as with the occurrence of the event or omission which produced the alleged injury.

That reasoning applies equally to the case before us.

Indeed, the discovery rule in this state has been extended beyond the scope of physician malpractice cases. *Peters v. Simmons,* 87 Wn.2d 400, 406, 552 P.2d 1053 (1976) (attorney); *Gazija v. Nicholas Jerns Co.,* 86 Wn.2d 215, 223, 543 P.2d 338 (1975) (insurance agent); *Hunter v. Knight, Vale & Gregory,* 18 Wn. App. 640, 643–44, 571 P.2d 212 (1977) (accountant); *Hermann v. Merrill Lynch, Pierce Fenner & Smith, Inc.,* 17 Wn. App. 626, 630, 564 P.2d 817 (1977) (stockbroker); *Kundahl v. Barnett,* 5 Wn. App. 227, 231, 486 P.2d 1164 (1971) (surveyor).

We believe its extension to products liability cases is especially reasonable when, as here, the challenged product is a medical one whose causal connection to injuries may not be discovered until well after the product has been in use. *Cf. Raymond v. Eli Lilly & Co.,* 371 A.2d 170, 176 (N.H. 1977); *see generally* Birnbaum, *"First Breath's" Last Gasp: Discovery Rule in Products Liability Cases,* 13 Forum 279 (1977).

While we agree with the trial court that the discovery rule should be extended to this products liability case, we disagree with the court's formulation and application of the rule. Like our above holding about Tacoma General, we now hold that appellant's claim against Air Shields did not accrue until after she discovered or reasonably should have discovered all the essential elements of her possible cause of action. This ruling accords with rulings in products liability cases in other jurisdictions. *Goodman v. Mead Johnson & Co.,* 534 F.2d 566, 575 (3d Cir. 1976), *cert. denied,* 429 U.S. 1038 (1977); *Schenebeck v. Sterling Drug, Inc.,* 423 F.2d 919, 925 (8th Cir. 1970); *Raymond v. Eli Lilly Co., supra* at 176.

Accordingly, the trial court erred when it granted respondent Air Shields' summary judgment motion. Our review of the record leads us to believe that whether appellant discovered all the elements of her possible cause of action against Air Shields more than 3 years before she filed this lawsuit is a genuine issue of material fact. CR 56(c). Its resolution should be left to the trier of fact.

The summary judgments in favor of Tacoma General Hospital and Air Shields, Inc., are reversed, and the case is remanded for trial.

UTTER, C.J., and ROSELLINI, STAFFORD, WRIGHT, HOROWITZ, DOLLIVER, HICKS, and WILLIAMS, JJ., concur.

Reconsideration denied October 8, 1979.