[No. 50772–4.   En Banc.   January 10, 1985.]

CERTIFICATION FROM THE
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT
OF WASHINGTON
IN
JEANNE ZENZEN WHITE, as Personal Representative,
Plaintiff, v. JOHNS–MANVILLE CORP.,
ET AL, Defendants.

*Burns, Schneiderman & Davis, P.S.,* and *George A. Finkle,* for plaintiff.

*Williams, Lanza, Kastner & Gibbs,* by *Randy J. Aliment* and *Joseph J. Lanza,* for defendants.

DOLLIVER, J.—The United States District Court for the Western District of Washington, pursuant to RCW 2.60, has certified the following issue:

Does the "discovery" rule set forth in *Ohler v. Tacoma Gen. Hosp.,* 92 Wn.2d 507, 598 P.2d 1358 (1979) and *Sahlie v. Johns–Manville Corp.,* 99 Wn.2d 550, 663 P.2d 473 (1983) apply to plaintiff's actions commenced under Washington Survival and Wrongful Death Statutes, R.C.W. Sections 4.20.010, 4.20.046 and RCW 4.20.060, so as to toll the applicable statutes of limitation until such time as plaintiff, as the surviving spouse and personal representative of the decedent, discovers or should reasonably have discovered the essential elements of her possible causes of action?

The stipulated facts are:

August Zenzen was exposed to asbestos while working as a welder/burner in shipyards during 1942 and 1943. He died March 8, 1974 of pulmonary congestion alleged to be as a consequence of mesothelioma of the right pleura. Mr. Zenzen's surviving spouse and personal representative, Jeanne Zenzen White, commenced this lawsuit against the defendant companies on October 3, 1980. Plaintiff alleged that Mr. Zenzen's prior shipyard exposure to asbestos–containing products manufactured and/or distributed by defendants was the cause of his death; that the decedent never knew that he was suffering from any adverse effects of exposure to asbestos–containing materials; and that she did not learn until late 1978 that his death may have been due to asbestos exposure.

In this lawsuit, plaintiff has alleged three distinct causes of action:

(1) A claim under RCW 4.20.010 (wrongful death statute);

(2) A claim under RCW 4.20.046 (survival statute);

(3) A claim under RCW 4.20.060 (survival of actions for personal injury resulting in death).

Defendants assert that all three causes of action are time barred by the applicable statutes of limitation, and that the "discovery" rule tolling the statutes does not apply after death of decedent in favor of his personal representative and statutory beneficiaries.

Plaintiff responds that the applicable statutes of limitation were tolled until she, as personal representative and statutory beneficiary, discovered or reasonably should have discovered the elements of her cause of action. See, e.g., *Sahlie v. Johns–Manville Corp.*, 99 Wn.2d 550 [663 P.2d 473] (1983).

"Mesothelioma is a type of cancer affecting primarily the lining of the lungs. It was relatively rare until the widespread use of asbestos." Comment, *Manifestation: The Least Defensible Insurance Coverage Theory for Asbestos–Related Disease Suits*, 7 U. Puget Sound L. Rev. 167, 170 n.9 (1983) (citing Mehaffy, *Asbestos–Related Lung Disease*, 16 Forum 341, 343 (1980)). "Mesothelioma becomes a serious problem 30 to 35 years after onset of exposure. Untreated cases almost always result in death within a year, and current conventional treatment has done little to alter the prognosis." Comment, 7 U. Puget Sound L. Rev. at 170 n.9 (citing 4A R. Gray, *Attorney's Textbook of Medicine* ¶ 205C.72 (3d ed. 1980)). The medical profession has produced strong evidence establishing a causal connection between mesothelioma and asbestos exposure. In his study of 307 consecutive asbestos worker deaths occurring between 1943 to 1964, Dr. Irving Selikoff found four with pleural mesothelioma and six with peritoneal mesothelioma; this is considered to be an extraordinarily high occurrence. Six of the seven men with mesothelioma in the autopsy series had histories of prolonged employment in the asbestos industry. *See* Comment, *Asbestos Litigation: The Dust Has Yet To Settle*, 7 Fordham Urb. L.J. 55, 60–61 (1978) (citing Selikoff, *Relation Between Exposure to Asbestos and Mesothelioma*, 272 New Eng. J. Med. 560 (1965)).

We answer the federal court's certified issue in the affirmative.

## I
## WRONGFUL DEATH ACTION
## A

Defendants argue that the "discovery rule", applicable to medical malpractice and products liability actions, does not apply to wrongful death actions; that the wrongful death statute creates a new and original cause of action in the claimant which accrues and vests in the statutory beneficiaries on the date of the decedent's death; and that there is no logical or equitable reason to extend the "accrual" date for a wrongful death action past the date the decedent dies since death marks the time at which the claimant has the duty to inquire into and prosecute an action based on the decedent's death.

Plaintiff, the deceased's surviving spouse and personal representative, argues the "discovery rule" should be applied to wrongful death actions. She contends she should have the chance to prove at trial that, at the time of the deceased's death, neither she nor the deceased knew or should have known his death was caused by his occupational exposure to asbestos.

Preliminarily, we note we are not faced with, nor do we decide, a case in which the deceased is alleged by the defendant to have known the cause of the disease which subsequently caused his death. In that case there is a question as to whether the wrongful death action of the deceased's representative "accrued" at the time of the decedent's death, when the decedent first discovered or should have discovered the injury, or when the claimant first discovered or should have discovered the cause of death. *See Wilson v. Johns–Manville Sales Corp.*, 684 F.2d 111 (D.C. Cir. 1982); *Fisk v. United States*, 657 F.2d 167, 170–72 (7th Cir. 1981); *In re Johns–Manville Asbestosis Cases*, 511 F. Supp. 1235, 1239 n.6 (N.D. Ill. 1981).

## B

The wrongful death statute, RCW 4.20.010, provides:

When the death of a person is caused by the wrongful act, neglect or default of another his personal representative may maintain an action for damages against the person causing the death . . .

Washington's wrongful death statute does not contain an express statute of limitation; rather, it is governed by RCW 4.16, which sets forth the statutes of limitation applicable to different types of actions. *Dodson v. Continental Can Co.*, 159 Wash. 589, 591–92, 294 P. 265 (1930). (Unlike in Washington, most states have a special statutory limitation, independent of the general statute of limitation, within which an action for wrongful death must be brought. *See* S. Speiser, *Recovery for Wrongful Death* § 11:8 (2d ed. 1975). The 3–year tort statute of limitation (RCW 4.16.080(2)) applies to the present action.) RCW 4.16.010 provides: "Actions can only be commenced within the periods herein prescribed *after the cause of action shall have accrued . . .*" (Italics ours.)

The issue in this case is when a wrongful death cause of action accrues. In an ordinary personal injury action, the general rule is that a cause of action "accrues" at the time the act or omission occurs. 51 Am. Jur. 2d *Limitation of Actions* § 135, at 704 (1970). In certain torts, however, injured parties do not, or cannot, know they have been injured; in these cases, a cause of action accrues at the time the plaintiff knew or should have known all of the essential elements of the cause of action. The rule of law postponing the accrual of the cause of action is known as the "discovery rule". *See Sahlie v. Johns–Manville Sales Corp.*, 99 Wn.2d 550, 552, 663 P.2d 473 (1983) (products liability action due to asbestos exposure); *Ohler v. Tacoma Gen. Hosp.*, 92 Wn.2d 507, 598 P.2d 1358 (1979) (medical malpractice action).

## C

Defendants first contend the issue in the present case

was decided in *Dodson v. Continental Can Co.,* 159 Wash. 589, 294 P. 265 (1930). We disagree. In *Dodson* the personal representative of a deceased brought an action against the deceased's employer after the expiration of the 3-year statute of limitation. To get around the statute of limitation, the claimant argued the statute of limitation "accrued" not at the time of the deceased's death but at the time she, the personal representative, was *appointed.* Rejecting the claimant's argument, we held that the wrongful death action "accrued" at the time of death. *Dodson,* at 598–99.

*Dodson,* however, is a prediscovery rule case and is significantly distinguishable from the present case. The claimant here alleges that, at the time of her husband's death, she could not have discovered facts enabling her to prosecute a cause of action, thus invoking the "discovery rule" which would operate to toll the statute of limitation. *Dodson* merely decided the statutory word "accrued" meant time of death and not appointment of a personal representative; the court, however, assumed the facts necessary to prosecute a cause of action were discoverable.

D

Defendants next cite several recent state court decisions in which the highest courts of Minnesota, North Dakota, and Pennsylvania held the wrongful death statute of limitation "accrues" at the time of the decedent's death. To toll the statute past the date of death, these courts require the wrongful death claimant to demonstrate the defendant employer fraudulently withheld information from which the plaintiff could have prosecuted a cause of action. *DeCosse v. Armstrong Cork Co.,* 319 N.W.2d 45 (Minn. 1982); *Krueger v. St. Joseph's Hosp.,* 305 N.W.2d 18 (N.D. 1981); *Anthony v. Koppers Co.,* 496 Pa. 119, 436 A.2d 181 (1981).

In *DeCosse* the decedent's personal representative sued an asbestos manufacturer alleging the decedent's death was caused by his exposure to asbestos at the workplace. The action was filed after the expiration of Minnesota's 3-year wrongful death statute of limitation. The Minnesota

Supreme Court rejected the claimant's argument that her cause of action "accrued" at the time she should have discovered the cause of her husband's death and not on the date of his death. In *Krueger* a widow whose husband died of a heart attack sued a hospital after she received an anonymous letter advising her the death of her husband was actually due to a defective hospital respirator. The wrongful death statute of limitation had expired. Refusing to toll the wrongful death actions these courts both reasoned:

> The discovery rule applicable in malpractice actions does not apply to wrongful death actions because it is the fact of death itself which should indicate a starting point for inquiry regarding a cause of action for wrongful death. When the facts used to determine whether a cause of action exists are equally available to the plaintiff, no additional aid in terms of a discovery period is necessary.

*Krueger,* at 23, *quoted in DeCosse,* at 51.

*DeCosse* and *Krueger,* however, are distinguishable from the present case since the wrongful death statutes under which these cases were decided are significantly different from their statutory counterparts in Washington. In *DeCosse,* the Minnesota wrongful death statute provided that the action "*may be commenced within three years after the act or omission.*" *DeCosse,* at 48. (Subsequently, and noted by the Minnesota Supreme Court, the Minnesota statute was changed to provide that the action "*may be commenced within three years after the date of death provided that the action must be commenced within six years after the act or omission.*" *DeCosse,* at 48.) Under the Minnesota statute, therefore, the *DeCosse* court could not—without encroaching upon the legislative function—impute a discovery rule exception into the wrongful death statute of limitation. *DeCosse,* at 50.

In *Krueger,* the North Dakota wrongful death statute provided "the cause of action shall be deemed to have accrued at the time of the death of the party injured." *Krueger,* at 22. The rationale of the *Krueger* court—"it is

the fact of death itself which should indicate a starting point for inquiry regarding a cause of action for wrongful death" (*Krueger,* at 23)—was mandated by the North Dakota statute. *Accord, Anthony v. Koppers Co.,* 496 Pa. 119, 123, 436 A.2d 181 (1981) (discovery rule does not apply to wrongful death statute which provided that a cause of action "shall be brought within one year *after the death, and not thereafter*" (italics ours) since the Legislature intended death, and not discovery, to be the time at which the cause of action accrues).

Unlike Minnesota, North Dakota, and Pennsylvania, the Washington statute does not specify a time at which a cause of action "accrues". Rather, the general rule of law is that a cause of action "accrues" when the plaintiff discovered or reasonably should have discovered all of the essential elements of a cause of action. *Ohler v. Tacoma Gen. Hosp.,* 92 Wn.2d 507, 511, 598 P.2d 1358 (1979). Under this analysis, it would be an issue for the trier of fact as to whether the decedent's death provided facts from which the claimant discovered, or could have discovered, the cause of her husband's death.

## E

Defendants next rely upon a line of federal cases holding that, under the federal tort claims act, a wrongful death cause of action "accrues" at the time of death. *See* Annot., *Statute of Limitations Under Federal Tort Claims Act (28 USCS § 2401(b)),* 29 A.L.R. Fed. 482, 517 (1976) (noting there is a conflict in the federal courts of appeals).

The leading federal case is *Kington v. United States,* 396 F.2d 9 (6th Cir.), *cert. denied,* 393 U.S. 960 (1968). In *Kington* the court rejected the claimant's argument that the statute of limitation for her wrongful death action accrued at the time she discovered, as a result of an autopsy conducted 2 months after his death, the cause of her husband's death. *Accord, Woody v. Johns–Manville Sales Corp.,* 491 F. Supp. 1073 (E.D. Tenn. 1980).

*Kington* and *Woody* are not on point. Neither case

required application of the discovery rule since the facts from which the plaintiff could have prosecuted a cause of action were not alleged by the plaintiff to be undiscoverable at the time the decedent died. In *Kington,* for example, the plaintiff learned, as a result of an autopsy conducted 2 months after her husband's death, that he died of exposure to beryllium. *Kington,* at 10. The court noted:

> The cause of death is generally known at the time of death or shortly thereafter. . . . If the cause is not known, it can be ascertained readily by an autopsy.

*Kington,* at 12. *Woody* was likewise based on the *assumption* that the facts from which a cause of action could be prosecuted were discoverable. The *Woody* court noted: "All the information from which the cause of death could be ascertained was available to the plaintiff at the time of death . . ." *Woody,* at 1074.

In contrast to *Kington* and *Woody,* the plaintiff in the present case alleges she did not or could not have discovered the cause of her husband's death at the time he died. The distinction between *Kington* and the present case was prophetically noted by the dissent of Judge Edwards in *Kington:*

> [If we] adopt the rule that the cause of action "accrues" at death, regardless of whether or not appellant could then have known of the exlistence [*sic*] of the cause of action, we commit this circuit to a rule which is bound to have totally unreasonable results in other cases where the cause of death is not so promptly discovered.
>
> . . .
> . . . [T]here is a class of cases involving both illness and death where the claimant does not, and in the exercise of normal diligence could not, know of the existence of the cause of action. In such instances, compliance with a statutory time limitation may be impossible.

*Kington,* at 12 (Edwards, J., dissenting).

## F

■ We reject defendants' assertion that, as a matter of law, the date of the decedent's death marks the time at which a wrongful death action "accrues". Instead, we hold a

wrongful death action "accrues" at the time the decedent's personal representative discovered, or should have discovered, the cause of action. Whether death marks the time at which a cause of action could have been prosecuted is a question for the trier of fact.

Our holding today has ample, well reasoned precedent. In *In re Johns–Manville Asbestosis Cases,* 511 F. Supp. 1235, 1236 (N.D. Ill. 1981), the court held that, despite an Illinois statute providing that a wrongful death action "shall be commenced within two years after the death", the discovery rule applied to the claimant's wrongful death action. The federal court was persuaded by a prior decision of the Illinois Supreme Court in *Nolan v. Johns–Manville Asbestos,* 85 Ill. 2d 161, 421 N.E.2d 864 (1981). This was a strict liability case in which the Illinois court stated:

> We are of the opinion that in a case such as this, where the injury occurred over a long period of time and not as a result of one sudden traumatic event, the preferred rule is that the cause of action accrues when the plaintiff knows or should know of an injury and that the injury was probably caused by the wrongful acts of another.

*In re Johns–Manville Asbestosis Cases,* at 1238 (citing *Nolan v. Johns–Manville Asbestos,* at 169). *See also Myers v. McDonald,* 635 P.2d 84 (Utah 1981).

A wide variety of federal cases in nonoccupational hazard cases have likewise applied the discovery rule to wrongful death actions. In *Pollard v. United States,* 384 F. Supp. 304 (M.D. Ala. 1974), the decedent's personal representative brought an action against the United States alleging a government syphilis study caused the decedent's death. In its motion for summary judgment, the United States argued the plaintiff's action was barred on the grounds that the wrongful death statute accrued on the date of death. *Pollard,* at 310. The court rejected the government's position and held that the wrongful death action accrued at the time the claimant discovered, or in the exercise of reasonable diligence, should have discovered the existence of facts upon which the claim was based. *Pollard,* at 310 (citing

*Quinton v. United States,* 304 F.2d 234, 235 (5th Cir. 1962)) (applying the discovery rule to medical malpractice actions).

Similarly, in *Barrett v. United States,* 689 F.2d 324 (2d Cir. 1982), *cert. denied,* 462 U.S. 1131 (1983), the court held an administratrix's 42 U.S.C. § 1983 action, arising out of negligent chemical drug tests administered to the deceased, a volunteer psychiatric patient, did not "accrue" on the date the deceased died. The court emphasized that the critical facts concerning causation were, practically speaking, not discoverable by the plaintiffs since they were in the control of the government and were only selectively disclosed to the plaintiffs. *Barrett,* at 329. The court, therefore, held that the "accrual" determination was a question of fact; the inquiry would be what knowledge the plaintiff administratrix had regarding the deceased's death, whom she believed to be responsible, and the extent to which she was diligent in pursuing her claim. *Barrett,* at 329–30. Finally, the court stated that, when the decedent died, "[the deceased's] family had no reason to investigate any further based on the information available to it in the 1950s." *Barrett,* at 330. *See also Liuzzo v. United States,* 485 F. Supp. 1274 (E.D. Mich. 1980); *Shaughnessy v. Spray,* 55 Or. App. 42, 637 P.2d 182 (1981).

G

The application of the discovery rule to the present case reflects the latent nature of occupational diseases. Often the critical facts about causation may not be discoverable until several years after death. Defendants' assertion that an autopsy and a death certificate will always reveal the occupational related cause of death is not necessarily true. As one authority notes:

> Diagnoses listed on death certificates contain notoriously a considerable degree of error, especially if they apply to diseases of internal organs which often are determined without the aid of pathologic studies. The causes of death among members of a worker group listed on death certificates may contain a surprisingly small

number of diagnoses of lung cancer and an unusually high percentage of diagnoses from noncancerous, chronic diseases of the lung . . . There is a likelihood that, in some or possibly many cases, the diagnosis of lung cancer has been missed and, therefore, a detailed medical exploration of the histories of all deaths from chronic lung disease in this group would be necessary to obtain scientifically as well as medicolegally more valid evidence . . .

. . . Epidemiologic studies in both this country and England have shown that occurrences of bladder cancers from occupational and nonoccupational causes are distinctly under–recorded on death certificates . . .

5B *Lawyers' Medical Cyclopedia* § 38.48(F) (1972).

It is unreasonable to expect or require, as a matter of law, the ordinary wrongful death claimant to initiate and conduct the massive research necessary to prove the causal link between occupational exposure and resulting cancer; such research takes numerous years and vast resources. This may be particularly true in cases of occupational diseases where information relevant to asbestos related deaths sometimes is not available to the claimants but is in the exclusive control of the defendant corporation. *See* Comment, *Asbestos Litigation: The Dust Has Yet To Settle*, 7 Fordham Urb. L.J. 55, 80 (1978); 5B *Lawyers' Medical Cyclopedia* § 38.51b (1972).

Lastly, we discuss defendants' contention that application of the discovery rule to wrongful death actions will have a "slippery slope" effect on occupational hazard litigation. This apparently was a primary concern of the *DeCosse* court:

It is not in the public interest, absent a showing of fraudulent concealment, to encourage, literally, the unearthing of wrongful death causes of action long after the death has occurred because there is some suspicion that death was caused by a wrongful act.

*DeCosse v. Armstrong Cork Co.*, 319 N.W.2d 45, 52 (Minn. 1982). *See also* Granelli, *The Asbestos Case Explosion: More Suits Expected After Latest Appellate Rulings*, 4 Nat'l L.J. 1 (Oct. 19, 1981).

While the Legislature may in the future decide otherwise,

we find the problem of "unearthing" wrongful death causes of action to be minimal compared to the hardships imposed on the victims unblamably left without a remedy. *See generally* Comment, *Preserving Causes of Action in Latent Disease Cases: The Locke v. Johns–Manville Corp. Date–of–the–Injury Accrual Rule,* 68 Va. L. Rev. 615, 634–36 (1982); 52 U. Cin. L. Rev. 239 (1983); Note, *Wilson v. Johns–Manville Sales Corp. and Statutes of Limitations in Latent Injury Litigation: An Equitable Expansion of the Discovery Rule,* 32 Cath. U. L. Rev. 471 (1983); Comment, *Occupational Carcinogenesis and Statutes of Limitation: Resolving Relevant Policy Goals,* 10 Envtl. L. 113 (1979).

The wrongful death statute of limitation accrues at the time the wrongful death claimant knew or should have known that the death of the decedent was caused by his exposure to asbestos.

## II
### SURVIVAL ACTIONS
### A

Defendants argue the discovery rule is inapplicable to survival actions on the grounds that a survival action "accrues" at the time of the decedent's death, the time at which the personal representative has a duty to inquire into the causes of the decedent's death. The plaintiff, on the other hand, argues the claimant in a survivorship action merely steps into the shoes of the decedent and should, therefore, have the benefit of the discovery rule. We agree with the plaintiff.

### B

The survivorship statutes applicable to the present case are RCW 4.20.046, .050, and .060. RCW 4.20.046(1), the general survival statute, provides:

All causes of action by a person or persons against another person or persons shall survive to the personal representatives of the former and against the personal representatives of the latter . . .

The Washington survival statute contains no express statute of limitation nor does it indicate the time at which a cause of action "accrues". *Cf.* Colo. Rev. Stat. § 13–21–204 (Supp. 1984) (survival action must be brought "within two years after the commission of the alleged negligence . . . or within one year after the death for which suit is brought, whichever is later"); R.I. Gen. Laws § 10–7–7 (Supp. 1984) (actions shall be commenced within 3 years after death).

## C

American courts are split on the issue whether the discovery rule applies to survivorship actions. Defendants urge we adopt the rule that a survivorship action is barred if, during the lifetime of the decedent the cause of action did *not* "accrue", *e.g.,* it was not actually or constructively discovered by the decedent. This rule has been enunciated most recently by the Pennsylvania Supreme Court in *Anthony v. Koppers Co.*, 496 Pa. 119, 436 A.2d 181 (1981). Emphasizing that survivorship actions are not new causes of action, the *Anthony* court reasoned, "they simply permit a personal representative to enforce a cause of action which had already accrued to the deceased before his death." *Anthony,* at 125. The *Anthony* court, at page 125, concluded:

> [B]y arguing that their decedents were not "injured" until some time *after* their deaths, appellees concede that no valid cause of action existed at the time of death which could be preserved under the survival statutes. The survival claims were clearly barred.

The same rationale was articulated in *McDaniel v. Johns–Manville Sales Corp.*, 511 F. Supp. 1241, 1243 (N.D. Ill. 1981):

> [The general rule is that] "the cause of action accrues when the plaintiff knows or should have known of an injury and that the injury was caused by the wrongful acts of another." If that two–fold knowledge or imputed knowledge had concurred during a decedent's lifetime, the Survival Act would have preserved the claim for the representative . . . If conversely such knowledge or

imputed knowledge did *not* concur during a decedent's lifetime . . . *Nolan* [v. *Johns–Manville Asbestos,* 85 Ill. 2d 161, 170, 421 N.E.2d 864 (1981)] teaches that the cause of action had not "accrued to the decedent before he died," and *National Bank of Bloomington* [v. *Norfolk & W. Ry.,* 73 Ill. 2d 160, 172, 383 N.E.2d 919 (1978)] teaches that there was simply no action to be kept alive by the Survival Act.

Alternatively, the defendants urge we follow the federal district court in *Redeker v. Johns–Manville Prods. Corp.,* 571 F. Supp. 1160 (W.D. Pa. 1983) interpreting Pennsylvania law. In *Redeker,* the court, while declining to follow *Anthony*'s strict accrual rule, held the survivorship statute of limitation "accrues" at the latest on the date of death. In rejecting *Anthony,* the court noted:

> [W]e are unwilling to conclude that the *Anthony* court intended on the basis of such meager and ambiguous rationale to overrule, *sub silentio,* decades of Pennsylvania authority and traditional tort law or to make such a far–reaching decision denying access to the courts by the estates of innocent tort victims.

*Redeker,* at 1167–68. The *Redeker* court went on to hold that the survival cause of action:

> [C]ommences to run when the victim had, or reasonably should have had, the knowledge [to discover his occupationally caused disease], *but commences at the latest on the death of the victim . . .*

(Citation omitted. Italics ours.) *Redeker,* at 1168.

### D

██ We decline defendants' invitation to rule either that, as a matter of law, a survivorship action "accrues" at the time of death, or is barred if it was not actually or constructively discovered by the decedent during his lifetime. RCW 4.20.046 does not create a separate claim for the decedent's survivors; rather, it merely preserves the causes of action that a person could have maintained had he not died. *Wooldridge v. Woolett,* 96 Wn.2d 659, 662–63, 638 P.2d 566 (1981). Defendants confuse the existence of a cause of action and the accrual of a cause of action; while

the plaintiff in the present case may have been injured by defendants during his life, his cause of action did not accrue unless he discovered, or should have discovered, the cause of his injuries. *See Sahlie v. Johns–Manville Sales Corp.,* 99 Wn.2d 550, 554–55, 663 P.2d 473 (1983). Since the decedent would have benefited from the discovery rule had he not died, his representatives should likewise benefit from it: what survives to the personal representatives are not only the decedents' ripe causes of action but include their potential causes of action which may not have accrued at the time of death.

Our decision to apply the discovery rule to survivorship actions finds support in *Eisenmann v. Cantor Bros.,* 567 F. Supp. 1347 (N.D. Ill. 1983). In that case an administratrix sued her deceased husband's employer alleging his occupational exposure to benzine proximately caused his death. On motions to dismiss, the defendant asserted plaintiff's claim was barred by the Illinois statute of limitation, which provided that "'actions to recover damages for an injury to the person' survive the death of the injured person." *Eisenmann,* at 1351 (quoting Ill. Ann. Stat. ch. 110½, § 27–6 (Smith–Hurd 1978)). The court denied defendant's motion to dismiss.

The *Eisenmann* court provided several reasons for its decision. First, it noted that the survival statute related to a right of action for personal injury arising during the life of the injured person. Second, the court stressed that the general policy of survival statutes was to ensure that wrongdoers actually were not relieved of some portion of their liability because their acts had been so grievous as to cause death. Third, the court emphasized that in the cause of invidious occupational diseases the discovery rule was often the only fair means by which a statute of limitation fairly can be applied to survival and wrongful death actions. Finally, the court rejected the holding of *McDaniel v. Johns–Manville Sales Corp., supra,* in which the court refused to apply the discovery rule to survivorship actions. The *Eisenmann* court noted:

While it is true that the [wrongful death and survivorship] Acts provide for different types of *damages,* the two causes of action are similar in their fundamental respects. The elements of both causes of action are essentially the same, as are the defenses generally available. Additionally, experience teaches us that both causes of action are predicated on the same set of operative facts. If, as is manifest, Mr. Eisenmann would have had the benefit of the discovery rule if he brought a tort action in his own name, neither policy nor logic will support a contrary result due to his death.

*Eisenmann,* at 1353.

We concur with the views expressed in *Eisenmann.* The date of death in a case involving an invidious occupational disease does not necessarily mark the *time* at which the claimants knew or should have known of the cause of the deceased's death. If death marks the time at which the claimant obtained actual or constructive notice of the cause of the decedent's death, this always may be proved at trial.

A survivor takes the rights of the decedent—no more *and no less.* Therefore if the decedent would have had a cause of action during his lifetime, but for the invidious nature of his disease and his inability to link the injury to the wrongdoer, then that cause of action, when discovered, should survive his death.

*Eisenmann,* at 1354.

We answer the second part of the federal court's certified question in the affirmative and hold the discovery rule applies to survival actions. The statute of limitation pertinent to a survival action commences at the earliest time at which the decedent or his personal representatives knew, or should have known, the causal relationship between the decedent's exposure to asbestos and his ensuing disease.

To recapitulate: The discovery rule set forth in *Ohler v. Tacoma Gen. Hosp.,* 92 Wn.2d 507, 598 P.2d 1358 (1979) and *Sahlie v. Johns–Manville Sales Corp.,* 99 Wn.2d 550, 663 P.2d 473 (1983) applies to actions brought both under the wrongful death statute and the survival statute.

WILLIAMS, C.J., UTTER, BRACHTENBACH, DORE, DIMMICK,

PEARSON, and ANDERSEN, JJ., and CUNNINGHAM, J. Pro Tem., concur.

Reconsideration denied February 15, 1985.