Dorothy Marry ROSE, Personal Representative of the Estate of Albert H. Marry, Deceased, Plaintiff, Appellant/Cross-Appellee,

v.

A.C. & S., INC., et al., Defendants-Appellees,

and

Raymark Industries, Inc., Defendant, Appellee/Cross-Appellant.

Nos. 85–3778, 85–3819.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 4, 1986.

Decided Aug. 6, 1986.

Richard J. Hilfer, Bangs, Castle, Schnautz & Hilfer, P.S., Seattle, Wash., Alfred Mollin, Dept. of Justice, Washington, D.C., for plaintiff, appellant/cross-appellee.

Eileen Concannon, Garvey, Schubert, Adams & Barer, Seattle, Wash., for A.C. & S., Inc.

Philip A. Talmadge, Karr, Tuttle, Koch, Campbell, Mawer & Morrow, Seattle, Wash., for Raymark.

Before WRIGHT, TANG and REINHARDT, Circuit Judges.

TANG, Circuit Judge:

This case involves a product liability suit against various manufacturers and sellers of asbestos-containing insulation products. Dorothy Marry Rose, widow and personal representative of Albert Marry, who died of asbestosis in April 1976, appeals from the district court's summary judgment dismissing her wrongful death and survival actions as time barred by the Washington three-year statute of limitations. She con-tends that Washington's discovery rule extends the statutory period so that her claim, filed in October 1980, is not time barred. We agree that summary judgment was inappropriate. One of the defendants, Raymark Industries, Inc., asserts on appeal that its "government specifications defense," ruled inapplicable by the district court in a separate summary judgment, provides an alternative ground for affirmance of the dismissal of the action. We reject this contention as untimely.

## BACKGROUND

Albert Marry worked at the Puget Sound Naval Shipyard in Bremerton, Washington at various times from 1929 to 1965 and during those years he was exposed to asbestos-containing products manufactured and/or sold by the defendants. He died of asbestosis on April 9, 1976 and although there is some dispute about whether he ever knew the nature or cause of his illness, it is not disputed that his widow learned the cause when she read his death certificate on approximately April 20, 1976.

Mrs. Rose sent a letter to her husband's doctor on April 30, 1976 stating "The lung specialist here said [Mr. Marry's death] was a classic case of asbestosis. The government will, hopefully, recognize this as an industrial hazard.... My lawyer here will at least put in a claim." In the ensuing months Mrs. Rose discussed her husband's death with lawyers in Phoenix and Seattle but she contends they did not inform her that the manufacturers of asbestos products could be held liable for manufacturing an unreasonably dangerous product. In June 1980 she consulted a lawyer who explained the basis for legal action against such manufacturers and on October 10, 1980 she filed a product liability suit claiming the defendants were strictly liable because "their asbestos and asbestos products were not reasonably safe" and because they failed to "provide adequate warnings." From the pre-trial order and counsel's statements at oral argument, it appears that the case was to be tried on a negligence theory as well as the strict lia-

bility theory Mrs. Rose alleged in her complaint.

Defendant Raymark and Mrs. Rose filed cross motions for summary judgment on Raymark's affirmative defense of compliance with government contract specifications. On October 12, 1984 the district court granted summary judgment for Mrs. Rose on this issue. On March 18, 1985 the district court dismissed the case on the ground that Mrs. Rose's claim was barred by the three-year statute of limitations. Mrs. Rose filed a timely appeal on April 15, 1985, and Raymark cross-appealed the summary judgment for Mrs. Rose on its asserted defense. This court ordered Raymark to raise its defense as an alternative ground for affirmance of the district court's dismissal of Mrs. Rose's claim, rather than as a separate cross-appeal.

## DISCUSSION

### I.  STATUTE OF LIMITATIONS

#### A.  *Standard of Review*

We review a district court's grant of summary judgment *de novo* to determine whether there are any genuine issues of material fact and whether the district court correctly applied the substantive law in ruling on the motion. *Levin v. Knight,* 780 F.2d 786, 787 (9th Cir.1986). We also review a district court's interpretation and application of state law *de novo*. *Matter of McLinn,* 739 F.2d 1395, 1397 (9th Cir. 1984) (en banc). In ascertaining whether there are genuine factual disputes we view the evidence and the inferences therefrom in the light most favorable to the nonmoving party. *Levin,* 780 F.2d at 787; *Lundy v. Union Carbide Corp.,* 695 F.2d 394, 396 (9th Cir.1982).

#### B.  *Summary Judgment on the Basis of the Statute of Limitations*

■  Washington law in 1980, when Mrs. Rose filed her claim, provided that a wrongful death or survival action must be filed within three years of the accrual of the cause of action. Wash.Rev.Code §§ 4.16.010, 4.16.080 (1980).

The Washington Supreme Court has developed an expansive rule for determining when a cause of action accrues in a medical malpractice or product liability action. In *Ohler v. Tacoma General Hospital,* 92 Wash.2d 507, 598 P.2d 1358 (1979), the court held when a woman blinded in infancy by a hospital's administration of oxygen did not learn there had been anything improper about the treatment until many years later, her medical malpractice claim did not accrue "until she discovered or reasonably should have discovered all of the essential elements of her possible cause of action, *i.e.,* duty, breach, causation, damages." *Id.* 598 P.2d at 1360. Further, her products liability claim did not accrue until she "discovered or reasonably should have discovered all the essential elements of her possible cause of action." *Id.* at 1362.

In 1983 the court applied the *Ohler* rule to a product liability action against asbestos manufacturers and held that the cause of action accrues when a plaintiff discovers or ought to have discovered the essential elements: (1) that the plaintiff suffers physical harm from a product which has a defective condition making it unreasonably dangerous; (2) that the defendant has engaged in the business of selling the product; and (3) that the product was expected to and did reach the plaintiff without a change in its condition. *Sahlie v. Johns-Manville Sales Corp.,* 99 Wash.2d 550, 551, 663 P.2d 473, 474 (1983). These elements are found in Restatement (Second) of Torts § 402 A (1965) and were expressly adopted by the Washington court in *Ulmer v. Ford Motor Co.,* 75 Wash.2d 522, 529, 452 P.2d 729, 733–35 (1969). The court emphasized in *Sahlie,* 663 P.2d at 475, that it was not suggesting that a plaintiff must be aware he has a legal cause of action, just that he must be aware of the facts comprising the essential elements of his action.

The Washington Supreme Court has expressly held that the *Ohler-Sahlie* discovery rule applies to actions brought under the survival and wrongful death stat-

utes. *White v. Johns-Manville Corp.*, 103 Wash.2d 344, 693 P.2d 687 (1985).[1]

In applying the discovery rule in this case, the district court found as a matter of law that Mrs. Rose's cause of action accrued in April 1976 when she learned her husband died from asbestosis. The court cited *White* for the rule that the "statute of limitations pertinent to a survival action commences at the earliest time at which the decedent or his personal representative knew, or should have known, the causal relationship between the decedent's exposure to asbestos and his ensuing disease." *Id.* 693 P.2d at 697. This formulation directly conflicts with the holding of *Ohler*, which requires knowledge, not of a causal relationship between an injury and harm, but of the elements of a cause of action. The question certified to the *White* court was whether the *Ohler-Sahlie* discovery rule applies to survival and wrongful death claims. *White*, 693 P.2d at 689. Its affirmative answer to this question is the controlling rule of *White, id.* at 697, not its apparent misstatement of the discovery rule itself.

The district court did not say only that Mrs. Rose had the knowledge apparently required by *White*. It went on to say that her knowledge of the critical facts of the cause of her husband's death—that he died of asbestosis, which was caused by exposure to asbestos at his work place—and her opinion that the Government should recognize asbestos as an industrial hazard formed the basis for the first element of a product liability cause of action. The court's analysis stressed that her knowledge of the elements of her cause of action was indicated by her letter referring to asbestos as an industrial hazard. Mrs. Rose argues persuasively that contemplation of filing a worker's compensation claim against the Government in no way suggests knowledge of the elements of a product liability cause of action against the asbestos companies. The district court inferred from the reference to asbestos as an industrial hazard that Mrs. Rose knew the product was unreasonably dangerous, an inference which is at least questionable, and certainly not the most favorable inference the court could have drawn. The court makes no reference to the state of her knowledge of the other two elements of her § 402A product liability claim (knowledge of the defendant sellers and knowledge that the product was in an unchanged condition). Knowledge of all three elements is critical. The Washington Court of Appeals has held that even when a plaintiff knows the precise cause of an injury-causing accident (a tipping scaffold), he does not have the knowledge of the elements of his product liability cause of action until he also knows the identity of the manufacturer of the scaffolding. *Martin v. Patent Scaffolding*, 37 Wash.App. 37, 43, 678 P.2d 362, 366 (1984). Because the facts were undeveloped, summary judgment was improper. *Id.*

Because there are factual questions about the knowledge Mrs. Rose had of the elements of her causes of action, and the timing of that knowledge, summary judgment dismissing her claim was not appropriate. *See Ohler*, 598 P.2d at 1361 (summary judgment is not appropriate when the outcome-determinative fact of the timing of a plaintiff's discovery of the elements of

1. The Washington Tort Reform Act altered the statute of limitations for product liability claims arising after July 26, 1981. The new statute provides that no such claim may be brought "more than three years from the time the claimant discovered or in the exercise of due diligence should have discovered the harm and its cause." Wash.Rev.Code § 7.72.060 (1982). The legislative change was intended to modify the judicial doctrine of the discovery rule first developed in *Ohler*. *See* P.A. Talmadge, *Washington's Product Act*, 5 U. Puget Sound L.Rev. 1, 14 (1981). This statute has no retroactive application. Its language states it shall apply to claims arising on or after July 26, 1981. Its legislative history demonstrates that it is viewed as a change from prior case law. *See* Journal of Washington Senate, at 626 (March 3, 1981). Further, in *Sahlie*, 663 P.2d at 475, the Washington Supreme Court expressly declined to accelerate the legislative modification of the rule in *Ohler*. Thus, Raymark's suggestion in its letter of October 21, 1985 that the Tort Reform Act statute of limitations should be applied, must be rejected.

her possible cause of action is in dispute). The district court did not properly apply the Washington discovery rule and did not view the facts and inferences therefrom in the light most favorable to Mrs. Rose. What she knew or should have known more than three years prior to filing suit is a factual question for the trier-of-fact. As a matter of law we cannot distinguish Mrs. Rose's circumstance from that of the plaintiff in *Sahlie* who knew ten years before he filed suit that he suffered from asbestosis caused by exposure to asbestos products. 663 P.2d at 474. The court there held that his knowledge was not equivalent to knowledge of the essential elements of his cause of action, "*i.e.*, that defendant seller had exposed him to an unreasonably dangerous product." *Id.* at 476. The only distinguishing fact in this case is that Mrs. Rose exercised diligence and consulted attorneys shortly after her husband's death, but this does not permit us to say as a matter of law that she should then have known the elements of a product liability action.

We do not think the recent decision of the Washington Court of Appeals in *Reichelt v. Johns-Manville Corp.*, 42 Wash. App. 620, 712 P.2d 881 (1986), compels a different result. There undisputed facts showed Reichelt's knowledge that asbestos was an unreasonably dangerous product and his knowledge of the identity of the manufacturers of the product. Reichelt had filed a worker's compensation claim in 1971 based on a diagnosis of asbestosis, he quit his job in 1974 based on his knowledge of the hazards of working with asbestos, and in 1974 and 1976 he received training as an OSHA investigator in which he was told asbestos was "dangerous" and a "hazardous material." *Id.* 712 P.2d at 884–85. Thus, the court rejected his contention that in January 1979 he did not know asbestos products were "unreasonably dangerous." *Id.* Because of the depth of the *Reichelt* plaintiff's knowledge, the case is distinguishable from the instant case. Mrs.

Rose never worked in a shipyard or with asbestos products. She knew her husband died from asbestosis in April 1976 but apparently thought of his death as caused by an occupational disease for which she might receive compensation from his employer rather than as caused by a hazardous product sold to the United States by identifiable manufacturers.

Thus we reverse the district court's grant of summary judgment dismissal of Mrs. Rose's claim as barred by the statute of limitations, and remand for trial on this question.[2]

## II. Government Contract Defense

■ We must treat Raymark's defense as an alternative ground for affirmance as mandated by our order of July 10, 1985. That order said, on the authority of *United States v. American Railway Express Co.*, 265 U.S. 425, 44 S.Ct. 560, 68 L.Ed. 1087 (1924) and *Angle v. United States*, 709 F.2d 570 (9th Cir.1983), that Raymark should not cross-appeal, since it was not aggrieved by the final judgment, but rather should assert its defense as an alternative theory in support of favorable judgment. Raymark urges us to affirm the dismissal on the ground of this affirmative defense. *See Fine v. Barry and Enright Productions*, 731 F.2d 1394, 1396 (9th Cir. 1984). We decline to do so because the district court granted summary judgment to the plaintiff based on Raymark's assertions on only three of the four elements of the defense, so the record below clearly does not provide a basis for affirmance on the ground that Raymark has a complete defense.

We do not comment on the propriety of the district court's partial summary judgment in favor of Mrs. Rose on this question. Instead, we dismiss Raymark's appeal because it is untimely. Our reversal of the district court's dismissal and remand to that court returns the question of sum-

---

**2.** We note that it is within the district court's discretion to have a separate trial on the question of whether Mrs. Rose's claim is time

barred. Fed.R.Civ.P. 42(b). *See Yung v. Raymark Industries, Inc.*, 789 F.2d 397, 401 (6th Cir.1986).

mary judgment on Raymark's defense to interlocutory status. *See Armstrong v. McAlpin,* 699 F.2d 79 (2d Cir.1983). After a trial on the merits of Mrs. Rose's claims, if one is held and if she prevails, the defendants will be free to appeal the decision which precluded their asserting the government contractor defense.

## CONCLUSION

We REVERSE the dismissal of Mrs. Rose's action as time barred and leave the issue of the government contractor defense on interlocutory status during the RE-MAND of the case to the district court for trial.