[No. 15144-1-III.   Division Three.   February 27, 1997.]

RICKEY L. HAMILTON, ET AL., *Appellants*, v. ARRIOLA BROTHERS CUSTOM FARMING, ET AL., *Respondents*.

*Eugene M. Moen* and *Chemnick, Moen & Greenstreet*, for appellants.

*Harvey Faurholt* and *Horton, Wilkins, Faurholt & O'Connor*; and *John G. Schultz, George B. Fearing*, and *Leavy, Schultz, Davis & Fearing, P.S.*, for respondents.

BROWN, J. — Mr. Hamilton appeals the trial court's

grant of Arriola Brothers' and S&S Farms' motion for summary judgment dismissing Mr. Hamilton's negligence cause of action as untimely. We affirm, after considering Mr. Hamilton's discovery rule issue.

## Facts

Rickey Hamilton was exposed to the pesticide Telone II on November 21, 1989. This exposure occurred while Mr. Hamilton and a friend, Randy Miller, were returning from hunting. As they were driving by a field near Burbank in Walla Walla County, they noticed "a couple of people running around, chasing some sheep, and the sheep were falling over." Mr. Hamilton and Mr. Miller stopped and, for approximately 90 minutes, ran around the field chasing and tackling sheep so a veterinarian could administer medication.

While Mr. Hamilton was in the field he experienced irritation in his throat and eyes. Mr. Hamilton noticed a tractor in a nearby field with "liquid spewing out of the end." He and Mr. Miller contacted the operator of the tractor who told them the chemical he was using was not harmful.

At midnight that night, Mr. Hamilton received a telephone call from the Walla Walla County Sheriff's office advising him that the other two individuals who had been in the field were having some kind of difficulties and had been admitted to the hospital. He was also told that he was "supposed to go there immediately on the advice of Poison Control." Mr. Hamilton did not go to the hospital that night, choosing instead to go the next morning to his family physician, Dr. Smith. Mr. Hamilton was at that time having a lot of difficulty breathing. Dr. Smith administered several tests and approximately one week later gave Mr. Hamilton his diagnosis of chemical hepatitis related to the sheep kill incident. His doctor told him that the chemical hepatitis would work itself out of his system, but that Mr. Hamilton would no longer have full lung capacity.

As early as December 7, 1989, Mr. Hamilton consulted a Yakima attorney who he believed was an expert in pesticide exposure cases. A March 26, 1990 contingency fee agreement was entered into in which the attorney agreed to represent him "in a personal injury spray drift claim suffered in 1989 against S&S Farms and others." Mr. Hamilton assisted his attorneys investigation by talking to state officials about the Burbank sheep kill and sending his attorneys a Telone II label and newspaper clippings about the incident.

Mr. Hamilton continued to have difficulty breathing; he also "coughed up a lot of mucous," felt weak, and had numerous previously unexperienced headaches lasting approximately six months. Sometime later, Mr. Hamilton began to suffer abdominal cramps, severe diarrhea, and high irritability.[1] Significantly, one of Mr. Hamilton's concerns before the end of the three-year limitation period was an enlarged liver which was discovered after a routine physical examination. As a result, he contacted a specialist who conducted various tests. That specialist performed a biopsy on Mr. Hamilton's liver and concluded it was healthy.

Later, after the three-year limitation period, Mr. Hamilton had more tests conducted at the direction of another physician. He was told that he may have a porphyria-related disease. After even more tests, Mr. Hamilton was diagnosed with hereditary coproporphyria on February 15, 1994. The doctor told him that the exposure to Telone II had made this hereditary condition symptomatic.

Mr. Hamilton filed his complaint against Arriola Brothers Custom Farming and S&S Farms on August 19, 1994, alleging that the defendants exposed him to pesticide poisoning on November 21, 1989. Arriola Brothers and S&S Farms moved for summary judgment on July 19, 1995. The trial court granted their motion because the

---

[1]Mr. Hamilton cannot recall when the initial symptoms ended and when the new symptoms began.

three-year statute of limitation had expired. Mr. Hamilton now appeals.

## Analysis

■■ The first issue is whether the discovery rule applies to this case. "The general rule in ordinary personal injury actions is that a cause of action accrues at the time the act or omission occurs." *In re Estates of Hibbard*, 118 Wn.2d 737, 744, 826 P.2d 690 (1992). In certain cases where injured parties do not, or cannot, know they have been injured, the cause of action accrues at the time the claimant knew or should have known of the essential elements of the cause of action. *White v. Johns-Manville Corp.*, 103 Wn.2d 344, 348, 693 P.2d 687, 49 A.L.R.4th 955 (1985). This exception is known as the "discovery rule." *White*, 103 Wn.2d at 348. However, "[a]pplication of the rule is limited to claims in which the plaintiffs could not have immediately known of their injuries due to professional malpractice, occupational diseases, self-reporting or concealment of information by the defendant." *Hibbard*, 118 Wn.2d at 749-50.

Mr. Hamilton contends that the discovery rule also applies to a non-occupational injury caused by exposure to chemicals. He argues that although "occupational disease" is defined in workers' compensation laws as a disease that arises out of employment, "occupational disease" is a broader concept when applying the discovery rule to a statute of limitation case. Mr. Hamilton asserts that the *Hibbard* court, by its use of the term "occupational disease," was referring in general to diseases that arise from exposure to chemicals or substances where there may be a delay before an individual discovers a causative relationship between the disease and the exposure. He contends that the *Hibbard* court could not have meant the term to apply only to claims covered by the workers' compensation laws. Mr. Hamilton has not cited any authority supporting his broad interpretation of what constitutes an "occupational disease."

■ Mr. Hamilton's situation is clearly distinguishable from the occupational disease cases. Those cases involved continuous exposure over a period of time which eventually resulted in an illness.[2] Individuals exposed were not immediately aware of the injury. The discovery rule applied to these cases due to the latent nature of the occupational disease. *White*, 103 Wn.2d at 354. Mr. Hamilton's exposure was not continuous and his injuries were not latent. Rather, he suffered a single exposure which immediately caused irritation of his eyes and throat. Later that night he was told to go to the hospital. The next morning Mr. Hamilton had difficulty breathing and went to his family doctor who diagnosed him with chemical hepatitis. Unlike the occupational disease cases, Mr. Hamilton immediately knew the November 21, 1989 exposure was the cause of his various symptoms. Accordingly, Mr. Hamilton's situation does not fall within one of the four instances in which the discovery rule applies, and the trial court properly granted Arriola Brothers' and S&S Farms' motion for summary judgment.

■ Even if the discovery rule were to be applied here, Mr. Hamilton was aware of all of the elements of a cause of action almost immediately after the exposure and even hired an attorney to pursue his claim. Mr. Hamilton's claim of increasing damage after the limitation period does not change the legal significance of his prior knowledge of the underlying facts of the claim. *Allen v. State*, 118 Wn.2d 753, 757-58, 826 P.2d 200 (1992).

Affirmed.

---

[2]*See, e.g., Department of Labor & Indus. v. Estate of MacMillan*, 117 Wn.2d 222, 224, 814 P.2d 194 (1991) (workers exposed to asbestos, both died in 1984, widows did not learn until 1986 that the deaths may be related to asbestos exposure); *White*, 103 Wn.2d at 345 (worker exposed to asbestos during 1942 and 1943, died in 1974, and surviving spouse did not learn until 1978 that her husband's death may have been attributable to asbestos exposure); *Sahlie v. Johns-Manville Sales Corp.*, 99 Wn.2d 550, 551, 663 P.2d 473 (1983) (worker exposed to asbestos almost continually between 1939 and 1978, learned he suffered from asbestosis in 1970 but did not discover that he may have a cause of action against the manufacturer until 1980).

THOMPSON and KURTZ, JJ., concur.