[No. 930-3. Division Three. October 28, 1974.]

Claude T. Yerkes, *Appellant*, v. Rockwood Clinic *et al.*, *Respondents.*

*William C. Harrison,* for appellant.

*Richard E. Hayes* (of *MacGillivray, Jones, Clarke, Schiffner & Johnson*), for respondents.

Green, C.J.—Plaintiff, Claude T. Yerkes, brought this action against the defendants, Rockwood Clinic, E. V. Johnston, M.D., and Rex T. Hoffmeister, M.D., alleging that

these defendants negligently failed to inform him of the material facts necessary to the giving of his informed consent to "certain procedures and treatment." Defendants moved for summary judgment, claiming plaintiff's action is barred by the statute of limitation.[1] The trial court granted the motion and dismissed the action.[2] Plaintiff appeals.

On September 7, 1965, plaintiff underwent surgery for a narrowing of his esophagus. In his answers to written interrogatories, plaintiff states that defendants, during surgery, severed the vagus nerve without his permission. Defendants' alleged negligence is said to consist of:

Cutting of the Vegus nerve. Operation on the plaintiff's esophagus leaving stitched (wire) in place, without curing esophagus.

Cut vegus nerve without asking for permission, terminating flow of hydrachloricacid, and without advice as to future results; said negligence resulted in constant diahrrea [sic] for plaintiff and loss of equilibruim [sic].

causing injuries as follows:

Constant diahrrea [sic], loss of equilibrium, severe chest congestion at slightest exposure, extremely susceptible to colds, affected my nerves, ruined my sex life and gave me what I term weeping anus.

For 10 days after surgery, defendants gave plaintiff:

Stool examinations and medication for diahrrea [sic] and color shots in veins to determine arterial insufficiency. Medication for Mineares [sic] Disease.

Plaintiff's contact with defendants occurred when Dr. Eaner Higgins, while casually talking to plaintiff in a Kalis-

---

[1] That portion of RCW 4.16.080 (2) reading:
   Within three years:

      . . .

      (2) an action for  . . .  injury to the person or rights of another . . .

[2] In denying a motion to reconsider, the trial court based its ruling not only upon RCW 4.16.080 (2), but also upon RCW 4.16.350 passed by the legislature in 1971. Counsel on appeal are in agreement that this statute does not apply to this case and need not be considered by this court on appeal.

pell, Montana, hospital pharmacy in 1965, was requested to make an appointment for plaintiff at the defendant Rockwood Clinic, for a low back problem. Although plaintiff was not a patient of Dr. Higgins, defendant, Dr. Johnston, wrote Dr. Higgins on September 30, 1965, as follows:

> Mr. Yerkes underwent his surgery at Sacred Heart Hospital here in Spokane on September 7, 1965. We found a rather typical achalasia with a narrowing of the lowest esophageal segment. We did a localized myotomy, a so-called Meller procedure, plus a vagotomy, pyloroplasty and reconstruction of the hiatus itself.
>
> He did extremely well postoperatively and had no complications. I have heard from him twice by telephone and he continues to eat well.
>
> I have discussed the problem of his dizziness for which you have been treating him, with Dr. Hoffmeister here, and we both felt that this was most likely not related to the medicines he received or the anesthetic materials. I suggested that he go on a salt-free diet and try Hydrodiuril just to see if the dehydrating procedures would help what is probably a slight hydrops of the semicircular canals, and am hopeful that this will be helpful.

The record does not disclose whether plaintiff was informed of the contents of this letter.

Subsequently, plaintiff consulted Drs. Bruce Allison and Donald Forbeck in Montana. Dr. Forbeck, responding to interrogatories, states that he first saw plaintiff on November 15, 1965. At that time, plaintiff complained of the following symptoms:

> [U]nsteadiness, which had been an intermittent affliction since September, 1965. . . . that about five weeks prior to his neurologic examination he developed an ear infection on the left, this being manifested by fullness in the left ear as well as apparent swelling along the left lateral aspect of his neck. Following myringotomy, this ear infection cleared uneventfully, but his improvement in this respect was associated with no apparent benefit on his unsteadiness. The latter disturbance entailed a tendency for veering to the right as well as perhaps a momentary visual darkening. He also mentioned "jumping" of objects in his field of vision when his unsteadiness was present.

and stated his surgical history to be:

> [T]hat in the past he had a tonsillectomy and adenoidectomy, a lumbar spine fusion in about 1940, a transurethral resection of his prostate gland, a cholecystectomy, and surgery for an apparent esophageal stricture in September 1965.

Dr. Forbeck further said:

> I have no record of his telling that his vagus nerve had been severed.

He last examined plaintiff on December 1, 1966, and could not recall any complaints of chronic diarrhea.

Dr. Allison, answering interrogatories, said he first saw plaintiff on July 5, 1966, and described his complaints as:

> Intermittent dizziness and poor balance since spinal fusion in 1940. Frequent episodes of low back pain, gas, and loose bowel movements. Weakness and fatigue.

Prior surgical procedures were noted as:

> 1940 Spinal fusion
> 1955 and 1960 Transurethral prostatic resection
> 1962 Cholecystectomy
> 1965 Repair of hiatal hernia.

Pertaining to the severance of the vagus nerve, Dr. Allison stated: "He told me about this but I did not record the date. I believe it was sometime in 1969." Plaintiff is presently and has been under Dr. Allison's care:

> Since 1967 I have seen him intermittently for multiple complaints, mainly a mild chronic prostatis [sic], for which I give him prostatic massage every few months. He has consulted me with complaints of intermittent diarrhea, low back pain, and right sciatic neuritis.
>
> Mr. Yerkes has chronic problems, but feel that his chronic diarrhea is due to an irritable colon syndrome. He has had stool cultures, sigmoidoscopy, and colon x-rays with no abnormal findings except for a minimal diverticulosis of the sigmoid colon.

and as to his chronic diarrhea:

> He first consulted me with a complaint of chronic, intermittent diarrhea of several years duration on January 16, 1967. However, it had been more severe for the past

ten days. I do not have the exact date when it commenced, but he recently told me that it started after his gall bladder or hiatal hernia surgery. Last year he seriously inquired if I could arrange for him to have a gall bladder transplant done to help correct his condition.

Dr. Allison states that he never told plaintiff the diarrhea was the probable result of a vagotomy performed in September 1965.

By affidavit, plaintiff states:

[O]n or about March 20, 1970 I first learned the consequences of having one's vagus nerve severed; I learned of the possible consequences during a discussion with a friend whose son had been advised by his doctor to have his vagus nerve severed; The consent of the parents was required prior to the operation because one of the side effects was constant diarrhea; During this discussion *I first realized that my health problems since my operation of September 7, 1965 were linked to the severance of my vagus nerve;* Prior to this discussion I had no knowledge that my suffering was due to my severed vagus nerve.

(Italics ours.)

Defendants contend that plaintiff's action is barred by the statute of limitations and, therefore, the trial court was correct in its summary dismissal of plaintiff's complaint. Their argument is outlined in counsel's affidavit:

That the plaintiff herein has claimed damages as a result of certain acts performed by the defendants herein . . . these acts are alleged to have occurred on or prior to September 7, 1965. . . . plaintiff sought and received treatment for the alleged results of said alleged negligent acts for a period some days commencing September 7, 1965. That this action was not commenced until June 12, 1972, nearly seven years subsequent to the alleged negligent acts of the defendants. . . . said alleged acts fall within the purview of RCW 4.16.010 and 4.16.080(2), which requires . . . actions to be commenced within three years from the date of such acts or injuries.

The correctness of the trial court's ruling on this position raises the only issue on appeal.

■ In malpractice actions, our State has adopted the "discovery rule" in determining when the action accrues under RCW 4.16.010 and 4.16.080 (2), *i.e.*, that the limitation period described in the statute of limitations begins to run when the injured party knows, or in the exercise of due care, should have known of the alleged negligent conduct. *Ruth v. Dight,* 75 Wn.2d 660, 453 P.2d 631 (1969); *Denison v. Goforth,* 75 Wn.2d 853, 454 P.2d 218 (1969); *Fraser v. Weeks,* 76 Wn.2d 819, 456 P.2d 351 (1969); *Janisch v. Mullins,* 1 Wn. App. 393, 461 P.2d 895 (1969). Although each of the malpractice actions involved in the cited cases differs from each other and from the instant case, there is nothing in the language of those decisions that would prevent application of the rule to this case. In *Mason v. Ellsworth,* 3 Wn. App. 298, 306-07, 474 P.2d 909 (1970), we said that "[t]he majority of jurisdictions treat informed consent in the same manner as medical malpractice."

■ Summary judgment should be granted only where there is no genuine issue of material fact. CR 56(c). In ruling upon such a motion, the court, among other considerations, "must consider the material evidence and all reasonable inferences therefrom most favorably to the non-moving party and, when so considered, if reasonable men might reach different conclusions the motion should be denied." *Balise v. Underwood,* 62 Wn.2d 195, 199, 381 P.2d 966 (1963). It is in this context that we must view the trial court's summary dismissal.

Plaintiff's affidavit stands uncontradicted, *i.e.*, he did not *actually* know until March 20, 1970, that his diarrhea was linked to the severance of the vagus nerve. Notwithstanding, the defendants urged and the trial court concluded that plaintiff *should have known* shortly after the surgery that the two were related. Resolving all inferences arising from plaintiff's affidavit and the answers to interrogatories most favorably to plaintiff, we are unable to say that reasonable men could not differ as to whether the plaintiff should have known prior to March 20, 1970, that the diarrhea might be

942

related to the severance of the vagus nerve. A genuine issue of material fact exists and summary judgment should not have been granted.

Reversed and remanded, costs to abide the result.

MUNSON and McINTURFF, JJ., concur.