[No. 5612–1–III.   Division Three.   July 24, 1984.]

DONALD J. WOOD, ET AL, *Appellants*, v. GERALD E. GIBBONS, ET AL, *Respondents*.

*William Wesselhoeft, Andrew L. Symons, Ferguson & Burdell,* and *John S. Biggs,* for appellants.

*William H. Mays, Darlene Johnson, Gavin, Robinson, Kendrick, Redman & Mays, Susan Cawley, Jeffers, Danielson, Sonn & Aylward, P.S., Ted Roy, Thomas A. Gish, Roy & Pell, Gary R. Eliasen, Thomas R. Merrick, Merrick, Hofstedt & Lindsey, P.S., Larry Carlson, Carlson & Drewelow, P.S., Irene M. Hecht, Burton C. Waldo, Keller, Rohrback, Waldo, Hiscock, Butterworth & Fardal, John G. Layman,* and *Layman, Loft, Smythe & Arpin,* for respondents.

THOMPSON, J.—This case involves the trial court's granting of a summary judgment having determined all claims were barred by the statute of limitation. We affirm.

In February 1969, Donald Wood, suffering from severe abdominal pain, was admitted to Mid–Valley Hospital. His

family physician, Dr. Cleveland, referred Mr. Wood to Dr. Gibbons because Mr. Wood had a short history of gastrointestinal difficulties. Mr. Wood was transferred to Central Washington Deaconess Hospital (Deaconess) where Dr. Gibbons removed Mr. Wood's appendix. A few days later, Dr. Gibbons performed a second operation to relieve an intestinal obstruction. Still later, a third surgery was performed. Approximately 80 percent of Mr. Wood's small intestine was removed because of massive adhesions. Tissue samples were taken and sent to the Armed Forces Institute of Pathology (AFIP) which reported birefringent material. It is now alleged this material showed contamination from starch powder on the surgical gloves.

Dr. Cleveland advised Mr. Wood that his abdominal condition was the result of regional enteritis, or Crohn's disease. A few months later, Dr. Cleveland told Mr. Wood of a letter from another doctor suggesting that Mr. Wood might have suffered a reaction to the starch powder on the gloves used during surgery. However, Dr. Cleveland did not believe that diagnosis was correct. Mr. Wood related the information to his parents and the family contacted an attorney. Presumably, the attorney investigated and reported to Mr. Wood and his parents there was nothing to pursue. The matter was dropped and Mr. Wood continued to understand his condition was regional enteritis.

In 1980, Mr. Wood was referred to Dr. Fenster, who told him he was not suffering from regional enteritis, but from a reaction to starch powder on surgical gloves. Within 1 year of Dr. Fenster's disclosure, Mr. Wood commenced an action against the doctors, two hospitals, the surgical supply companies, and the glove manufacturers. Defendants were granted summary judgment based on the statute of limitation.

In ruling on a motion for summary judgment, the court must consider the material evidence and all reasonable inferences therefrom in favor of the nonmoving party. *Wilson v. Steinbach,* 98 Wn.2d 434, 656 P.2d 1030 (1982). The motion may be granted only if there is no genuine

issue of material fact, and the moving party is entitled to judgment as a matter of law. If reasonable persons might reach different conclusions, the motion should be denied. *Klinke v. Famous Recipe Fried Chicken, Inc.*, 94 Wn.2d 255, 616 P.2d 644 (1980). This court's inquiry is the same as the trial court's. *Wilson v. Steinbach, supra.*

■ We note at the outset that a statute of limitation defense is not unconscionable and is entitled to the same consideration as any other defense. *Guy F. Atkinson Co. v. State*, 66 Wn.2d 570, 403 P.2d 880 (1965). Statutes of limitation seek to avoid the difficulty of a trial long after witnesses have disappeared and memories have dimmed. *See Summerrise v. Stephens*, 75 Wn.2d 808, 454 P.2d 224 (1969). Such difficulties are apparent in this case.

As a preliminary matter, Mr. Wood insists the doctors should be estopped from raising statutes of limitation as a defense since they breached their duty to disclose complete information to him. Estoppel in pais is available to prevent fraudulent or inequitable resort to the statutes of limitation. *Central Heat, Inc. v. Daily Olympian, Inc.*, 74 Wn.2d 126, 443 P.2d 544, 44 A.L.R.3d 750 (1968). Also referred to as the fraudulent concealment rule, *see Ruth v. Dight*, 75 Wn.2d 660, 453 P.2d 631 (1969), the doctrine applies when a defendant has concealed facts or otherwise induced a plaintiff not to bring suit.

■ Mr. Wood contends the contents of pathology reports, letters, a medical journal article, and a change in hospital procedure all should have been disclosed to him. But other than his assertions, nothing in the record suggests a physician is obligated to disclose such information. Indeed, the thrust of Mr. Wood's argument is that a doctor has a duty to disclose any information that may be the basis of a lawsuit. There is no proof the doctors deliberately concealed any information that would estop them from asserting the defense of the statute of limitation.

MEDICAL MALPRACTICE CLAIMS

Prior to 1971, medical malpractice actions were subject to

the general statutes of limitation contained in RCW 4.16-.010 and .080. In 1971, the Legislature added RCW 4.16-.350:

> Any civil action for damages against a hospital which is licensed by the state of Washington or against the personnel of any hospital, or against a member of the healing arts including, but not limited to, a physician licensed under chapter 18.71 RCW or chapter 18.57 RCW, . . . based upon alleged professional negligence shall be commenced within (1) three years from the date of the alleged wrongful act, or (2) one year from the time that plaintiff discovers the injury or condition was caused by the wrongful act, whichever period of time expires last.

Laws of 1971, ch. 80, § 1, p. 194. This act applies to injuries which occurred prior to its effective date. *See Ohler v. Tacoma Gen. Hosp.*, 92 Wn.2d 507, 598 P.2d 1358 (1979).[1] The statute was again amended in 1975, but that version applies only to health care provided after June 25, 1976. RCW 4.16.350.

In this case health care was provided in 1969; the 3–year period has long since passed. At issue is when the 1–year period began to run. Mr. Wood contends it began in the fall of 1980 when he "actually" discovered all the elements of his cause of action. Respondents suggest the test is when Mr. Wood discovered or reasonably should have discovered the elements of his cause of action.

We find the 1971 version of RCW 4.16.350 requires actual discovery.

> The 1971 statute was significantly different from the previous statute of limitations and our interpretation of that statute. The concept of the accrual of a cause of action contained in the general statute of limitations was eliminated. In its place is language that any action shall commence within 1 year of the time plaintiff discovers the injury or condition was caused by the wrongful act. The rule in *Ruth v. Dight, supra,* thus is limited to 1

---

[1]Arguably, if the cause of action accrued in 1969, it would be subject to the prior statutes, as explained in *Ruth v. Dight, supra.* We note our result would be the same.

year from the date of *actual* discovery of the injury or condition.

(Italics ours.) *Bixler v. Bowman,* 94 Wn.2d 146, 149, 614 P.2d 1290 (1980); *see also Teeter v. Lawson,* 25 Wn. App. 560, 610 P.2d 925 (1980). The doctors and hospitals rely heavily on *Ohler v. Tacoma Gen. Hosp., supra,* and *Sahlie v. Johns–Manville Sales Corp.,* 99 Wn.2d 550, 663 P.2d 473 (1983). In both those cases, the discussion of reasonable diligence pertains to products liability claims, not medical malpractice.

Legislative history and 1975 amendments lend added support to our actual discovery interpretation. As originally drafted, the statute required due care in discovering any negligence, but this was deleted and replaced with the language quoted above. House Bill 720, 42d Legislature (1971). Furthermore, the statute was amended and now contains a reasonable diligence requirement. RCW 4.16.350. An amendment to an unambiguous statute indicates a purpose to change the law. *People's Org. for Wash. Energy Resources v. Utilities & Transp. Comm'n,* 101 Wn.2d 425, 431, 679 P.2d 922 (1984). Since we find the statute requires actual discovery, we must decide when Mr. Wood actually discovered the essential elements of his cause of action. These elements are duty, breach, causation, and damages. *Ohler,* at 511.

Mr. Wood contends he did not actually discover his cause of action until September 1980, when he was told by Dr. Fenster he had suffered a reaction to the starch powder. We do not agree.

Mr. Wood admits that in 1969, Dr. Cleveland told him another doctor was of the opinion he might have suffered a reaction to the glove starch powder, resulting in the loss of a majority of his intestines. Mr. Wood and his mother were aware of a newspaper article concerning a similar cause of action. (It is interesting to note that the plaintiff in *Ohler* first became aware of her possible cause of action from the news media. *Ohler,* at 509.) The Wood family even sought the advice of an attorney. The fact the attorney was of the

opinion no cause of action existed did not stop the statutes from running. The basic information that is the basis of this cause of action was known to Mr. Wood in 1969. In 1980, he learned the name of a doctor who believed he suffered from starch peritonitis and has since discovered additional facts to buttress his complaint. But the defendant's duty, possible breach of that duty, possible causation and damages were all known to Mr. Wood in 1969. To this date the doctors are not in agreement that Mr. Wood actually suffered a reaction to that starch powder.

In summary, Mr. Wood was told starch powder was a possible cause of his injury, knew of a lawsuit with similar facts, and even sought the advice of an attorney. Having failed to pursue his claim in 1969, any causes of action he may have had for medical malpractice are now barred by the statute of limitation.

## PRODUCTS LIABILITY CLAIMS

■ The products liability claims present a slightly different question. In *Ohler v. Tacoma Gen. Hosp., supra,* the discovery rule formulated in *Ruth v. Dight, supra,* was applied to claims for products liability.[2] As further explained in *Sahlie v. Johns–Manville Sales Corp., supra* at 552:

> Under *Ohler,* the cause of action in a products liability case accrues when the plaintiff discovers or ought to have discovered all the essential elements of his possible cause of action. In an action against the seller of a product based on the Restatement (Second) of Torts § 402A (1965) . . . there are three such essential elements: first, that the plaintiff user or consumer suffers physical harm from a product which has a defective condition making it unreasonably dangerous; second, that the defendant seller is engaged in the business of selling such a product; and third, that the product is expected to and does reach the plaintiff without substantial change in the condition in which it is sold. Under *Ohler,* the cause of action does

---

[2]The law has since been modified for claims arising on or after July 26, 1981. *See* RCW 7.72.060 and RCW 4.22.920, Reviser's note, and *Sahlie v. Johns–Manville Sales Corp., supra.*

not accrue until the plaintiff discovers or ought to have discovered all three of these elements.

*Sahlie* stresses the key question is not whether plaintiff discovered violation of his legal rights, but rather discovery of the elements of the cause of action.

First, Mr. Wood contends a summary judgment on the issue of reasonable diligence is never appropriate because it involves a question of fact. This is incorrect. None of the cases cited by Mr. Wood hold summary judgment is improper on this issue. Rather, the courts are unable to say the records present no genuine issue of material fact. *Ohler,* at 512; *Yerkes v. Rockwood Clinic,* 11 Wn. App. 936, 941–42, 527 P.2d 689 (1974). Although it may be rare, there does not appear to be any reason to deny summary judgment as to plaintiff's reasonable diligence if there is no genuine issue of material fact. *Cf. LaPlante v. State,* 85 Wn.2d 154, 531 P.2d 299 (1975); *Rathvon v. Columbia Pac. Airlines,* 30 Wn. App. 193, 633 P.2d 122 (1981) (nothing precludes summary judgment on issues of negligence and proximate cause).

As discussed above, Mr. Wood had actual knowledge of his medical malpractice claims. Since these claims were closely connected with the products claim, we find Mr. Wood either knew or should have known of his cause of action for products liability. Summary judgment was proper.

The judgment of the trial court is affirmed.

MUNSON, C.J., and MCINTURFF, J., concur.

Reconsideration denied September 17, 1984.

Review denied by Supreme Court December 19, 1984.