[No. 11486-1-II. Division Two. January 14, 1991.]

*In the Matter of the Estates of*
ROBERT G. HIBBARD, ET AL.

HEIDI L. HIBBARD, *Individually and as Personal Representative, Plaintiff,* v. GORDON, THOMAS, HONEYWELL, MALANCA, PETERSON & O'HERN, ET AL, *Appellants,* THE STATE OF WASHINGTON, *Respondent.*

*Stuart D. Heath,. Anne McDonald,* and *Lane Powell Spears Lubersky,* for appellant Gordon, Thomas, Honeywell, Malanca, Peterson & O'Hern.

*Ronald A. Roberts, Jacquelyn Moore Aufderheide,* and *Eisenhower, Carlson, Newlands, Reha, Henriot & Quinn,* for appellant Puget Sound National Bank.

*Kenneth O. Eikenberry, Attorney General,* and *Glen A. Anderson, Assistant,* for respondent.

ALEXANDER, J.—The law firm of Gordon, Thomas, Honeywell, Malanca, Peterson & O'Hern (Gordon), E.M. Murray, a corporation, E.M. Murray, individually (Murray), and the Puget Sound National Bank (Puget Sound) appeal a summary judgment order of the Pierce County Superior Court dismissing the State of Washington as defendant from a suit brought by Heidi Hibbard and the estate of Robert and Maxine Hibbard against the State and all of the appellants. We reverse.

On December 6, 1977, Larry Knox unlawfully entered the home of Robert and Maxine Hibbard and proceeded to murder the Hibbards. He also allegedly raped their daughter, Heidi, on the same occasion, although the record is not clear as to whether or not he was ultimately charged with rape. Knox pleaded guilty to murdering the Hibbards and was sentenced to prison.

At the time Knox committed the murders, he was under the jurisdiction of the State of Washington, having previously been placed on probation for burglary. In addition, Knox had formerly been a patient at Western State Hospital. He obtained his release from that facility approximately 7 months before the murders and the alleged rape.

Puget Sound was appointed as the personal representative of the Hibbards' estate. E.M. Murray, then a member of the Gordon firm, served as attorney for Puget Sound in its capacity as personal representative. The probate of the estate was completed in March 1980. During the pendency of the probate, Puget Sound did not commence an action against the State on the estate's behalf or on behalf of Heidi Hibbard.

In 1983, the Hibbard estate was reopened and Heidi Hibbard was appointed as administratrix of the estate. In November 1983, Hibbard filed a claim with the State of Washington for personal injuries she allegedly sustained as a result of being raped by Knox. Two months later, in her capacity as personal representative of her parents' estate, she filed a claim with the State for damages for her parents' wrongful death. Both claims were denied by the State.

On February 3, 1984, Hibbard commenced an action, on her own behalf and on behalf of the estate, against Puget Sound, Murray, and Gordon. Hibbard claimed that those defendants knew or should have known that she and/or the estate had a cause of action against the State of Washington and that they were negligent in not commencing such an action on behalf of the estate, and in failing to inform her of her right to commence such an action on her own behalf. The State of Washington was later added as a defendant. Hibbard claimed that the State and its agents were negligent in "failing to protect the Hibbards from the dangerous and violent propensities of Larry Knox and that as a direct and proximate result of the tortious conduct of the State of Washington, Robert G. and Maxine Hibbard were killed and Heidi Hibbard was injured."

The State moved for summary judgment of dismissal. It argued that even if it had acted negligently, as alleged, the 3-year statute of limitations applicable to negligence actions had run on the claims against it. Hibbard responded to the motion by submitting her own affidavit in which she indicated that she had not discovered the State's negligence until October 1983. Pertinent portions of that affidavit are set forth as follows:

4. On December 6, 1977, Larry Knox brutally murdered my parents and then raped me.
5. In the Fall of 1983, a friend called me and told me to read a newspaper article which generally described the *Peterson* [sic] decision.[1]

---

[1] In *Petersen v. State,* 100 Wn.2d 421, 671 P.2d 230 (1983), the Supreme Court discussed the fact that a woman by the name of Cynthia Petersen was

6. Until 1983, I did not know that Larry Knox was on probation for burglary.

7. At the time of the murders of my parents, I learned from police and others that Larry Knox had previously cut off his left testicle. I also learned that he had spent some time as a mental patient, but I knew nothing surrounding his admission or discharge from the mental hospital. I did not know that he had been involved in a traffic accident until I read *Peterson* [*sic*].

8. No one ever mentioned to me that I had a right to sue Larry Knox or anyone else. I don't recall anyone ever using the term "wrongful death."

9. The first time I learned that I might have had a right to recover money because of my parents' deaths was when I visited Attorney Gary Wallis in October 1983.

The trial court granted the State's motion, concluding that the cause of action against the State was barred by the 3–year statute of limitations on negligence actions. It concluded that the 3 years began to run on December 6, 1977, the date Hibbard's parents were murdered and Hibbard was allegedly raped. The trial court declined to apply the "discovery rule," which would have had the effect of tolling the running of the 3–year statute of limitations until such time as Hibbard knew or should have known of the State's negligence. Gordon, Murray, and Puget Sound appealed the court's order granting the State's motion for summary judgment.[2]

---

injured when her car was struck by a vehicle driven, coincidentally, by Larry Knox. According to the opinion, Knox ran a red light before striking Petersen's vehicle. The court pointed out in *Petersen* that Knox appeared to have been under the influence of drugs. The *Petersen* opinion also revealed that Knox was on probation for burglary and had been committed to Western State Hospital. While at Western State, Knox was treated by a Dr. Miller who was aware that Knox was on probation and that he had an extensive history of drug abuse, including the frequent use of "angel dust." The opinion disclosed that Dr. Miller released Knox from Western State 5 days before the accident, notwithstanding his knowledge of Knox's dangerous propensities and reckless behavior at the hospital on the evening before his release. *Petersen*, 100 Wn.2d at 423–24.

[2]Only an aggrieved party may appeal to this court. RAP 3.1. The parties have not addressed the right of Gordon, Murray, and Puget Sound to appeal the trial court's dismissal of Heidi and the estate's cause of action against the State. The claims of Heidi and the estate against Gordon, Murray, and Puget Sound fail if the court finds that the action against the State was not time barred. Therefore,

■ In reviewing a trial court's decision to grant summary judgment, this court engages in the same inquiry as the trial court. *Hontz v. State,* 105 Wn.2d 302, 311, 714 P.2d 1176 (1986). A motion for summary judgment should only be granted if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); *Hontz v. State, supra.* All the evidence and inferences therefrom are to be considered in favor of the nonmoving party. *Hontz,* 105 Wn.2d at 311. If reasonable minds can differ as to the conclusions to be drawn from the evidence, then a motion for summary judgment should be denied. *Fleming v. Stoddard Wendle Motor Co.,* 70 Wn.2d 465, 467, 423 P.2d 926 (1967).

The overriding issue with which we are here confronted is whether the trial court erred in concluding, as a matter of law, that the 3–year statute of limitations had run on Hibbard and the estate's cause of action against the State of Washington. To answer this question we must examine the so–called "discovery rule" and determine whether or not it applies in this case.

Gordon, Murray, and Puget Sound argue that the discovery rule does apply. They contend that the statute of limitations on Hibbard's claims against the State was tolled until such time as she discovered or reasonably should have discovered that she had a cause of action against the State. The State responds that the discovery rule is not applicable, and argues, additionally, that even if the discovery rule is available in this type of case, it is not applicable here because Hibbard should reasonably have discovered that she and the estate had a cause of action against the State at the time her parents were murdered and she was raped.

■ The applicable statute of limitations in this case, by agreement of all the parties, is RCW 4.16.080. It is a 3–year

we can only assume that the parties agree that Gordon, Murray, and Puget Sound are aggrieved parties because their pecuniary rights are substantially affected by the trial court's dismissal of the case against the State. *See Cooper v. Tacoma,* 47 Wn. App. 315, 316, 734 P.2d 541 (1987).

statute under which the limitation period for a cause of action commences when the action "accrues." Ordinarily an action accrues at the time of the act or omission. *White v. Johns–Manville Corp.*, 103 Wn.2d 344, 348, 693 P.2d 687, 49 A.L.R.4th 955 (1985). In some cases, however, the injured party does not know, or cannot know, at the time of the tortfeasor's act or omission, all the essential elements of his or her cause of action. In such cases, the cause of action accrues when the plaintiff knew, or reasonably should have known, all the essential elements of his or her cause of action. *Reichelt v. Johns–Manville Corp.*, 107 Wn.2d 761, 769, 733 P.2d 530 (1987). This is the so–called "discovery rule."

Until now the courts of this state have only applied the discovery rule to "certain torts." *Gevaart v. Metco Constr., Inc.*, 111 Wn.2d 499, 501, 760 P.2d 348 (1988) (quoting an unpublished opinion of Division One of this court, noted at 48 Wn. App. 1034 (1987)). For instance, the rule has been applied in products liability, wrongful death, professional malpractice, and fraud cases. *See Reichelt v. Johns–Manville Corp.*, *supra* (products liability); *White v. Johns–Manville Corp.*, *supra* (wrongful death); *Ohler v. Tacoma Gen. Hosp.*, 92 Wn.2d 507, 598 P.2d 1358 (1979) (medical malpractice); *Busenius v. Horan*, 53 Wn. App. 662, 769 P.2d 869 (1989) (fraud).

■ The rationale for applying the rule in those cases was to strike a balance between the "preservation of limitations on the time in which the action may be brought and a preservation of the remedy, too, where both parties are blameless as to delay in discovery of the asserted wrong." *Ruth v. Dight*, 75 Wn.2d 660, 666–67, 453 P.2d 631 (1969) (first case to apply the discovery rule in this state). Taking into consideration the rationale for the rule and the fact that in *any* negligence case the plaintiff might not have knowledge of all the elements of his or her cause of action, we see no reason to limit the application of the rule only to certain negligence cases. We therefore hold that the discovery rule applies in *all* negligence cases where the plaintiff

could only have known all the essential elements of his or her cause of action at some time after the actual occurrence of the alleged tort.

■■ Nevertheless, we acknowledge that the plaintiff has an affirmative duty to exercise due diligence in pursuing all the elements of his or her cause of action. *See North Coast Air Servs., Ltd. v. Grumman Corp.,* 111 Wn.2d 315, 319, 759 P.2d 405 (1988) (claimant in products liability case must have discovered, or in exercise of due diligence should have discovered, a factual causal relationship between the product and the harm); *Gevaart,* 111 Wn.2d at 502 (by exercise of due diligence, plaintiff could have discovered all the elements of her cause of action). The affirmative duty of due diligence imposes a burden on the plaintiff to take every available step to pursue the elements of his or her cause of action. *Gevaart v. Metco Constr., Inc., supra.* If due diligence is not exercised by the plaintiff in a timely manner, the cause of action will be barred by the statute of limitations. *Reichelt,* 107 Wn.2d at 772.

In determining whether a plaintiff has exercised due diligence, the trier of fact is to apply an objective standard and ask whether the plaintiff has exercised the diligence that a reasonable person would exercise in the same or similar circumstances. The trier of fact is to determine the point at which the plaintiff had knowledge or should have had knowledge, of each of the four elements of a cause of action. Once the plaintiff has some information about each of these four elements (*i.e.,* duty, breach, causation, injury), the statute begins to run regardless of whether the plaintiff is aware of a legal cause of action at that time. *Olson v. Siverling,* 52 Wn. App. 221, 228, 758 P.2d 991 (1988), *review denied,* 111 Wn.2d 1033 (1989); *Wood v. Gibbons,* 38 Wn. App. 343, 685 P.2d 619, *review denied,* 103 Wn.2d 1009 (1984).

Having concluded that the discovery rule may be applied in any negligence case, we must now turn to the question of

whether the trial court erred in granting summary judgment here. The State argues that there is no factual question as to when Hibbard reasonably could have known all the elements of her cause of action because she was aware of her injuries on the date of the murders and there were no hidden injuries to discover. Gordon, Murray, and Puget Sound, while conceding that Hibbard was aware that a tort had been committed by Knox on the date of the murders and alleged rape, contend that she was not aware of all elements of her cause of action, *i.e.,* the State's negligence. Although Hibbard's affidavit reveals that she knew Knox had been a "mental patient," there is no indication that she knew before 1983 that he had been under the supervision of the State as a mental patient or as a probationer. Consequently, it cannot be said that she was aware that the State might have been negligent in supervising Knox before 1983. Viewing Hibbard's affidavit as we must, we conclude that reasonable minds could differ as to when Hibbard knew, or should have known, of the State's alleged negligence to Knox and resulting negligence to Hibbard. *See Martin v. Patent Scaffolding,* 37 Wn. App. 37, 44–45, 678 P.2d 362, *review denied,* 101 Wn.2d 1021 (1984).

In our judgment, the extent of Hibbard's knowledge is a question of fact to be answered by the trier of fact. It is up to a judge or jury to decide the point at which Hibbard knew or should have known of the State's alleged negligence, and whether or not Hibbard exercised due diligence in learning all of the elements of her cause of action in a timely manner. *Gevaart v. Metco Constr., Inc., supra.*

Summary judgment should not have been granted and, therefore, we reverse the order of summary judgment.

WORSWICK, C.J., concurs.

REED, J.* (dissenting)—I would affirm the order dismissing Hibbard's claims against the State. First, the appellants would appear to have no standing to appeal. The order appealed from granted the State's motion for summary judgment and dismissed Hibbard's claims against the State. Only an aggrieved party may appeal to this court. RAP 3.1. "An aggrieved party is one whose proprietary, pecuniary, or personal rights are substantially affected." *Cooper v. Tacoma*, 47 Wn. App. 315, 316, 734 P.2d 541 (1987) (Worswick, J.). Hibbard was the only party aggrieved by the order appealed from, and she has not appealed. Gordon, Murray and Puget Sound did not intervene in Hibbard's suit, are not bound by the result therein, and thus were in no way aggrieved and may not appeal. The majority's contention that appellants' "pecuniary rights are substantially affected" by the order appealed from is pure conjecture and speculation and has no support in the record. *See Terrill v. Tacoma*, 195 Wash. 275, 278, 80 P.2d 858 (1938), where the court, quoting from *Elterich v. Arndt*, 175 Wash. 562, 27 P.2d 1102 (1933), states:

> A person can have no standing to appeal unless he has a substantial interest in the subject matter of the litigation and is aggrieved or prejudiced by the judgment or decree.
> "And not only must a party desiring to appeal have an interest in the particular question litigated, but his interest must be *immediate and pecuniary, and not a remote consequence of the judgment.* . . .
> "'. . . The damage or grievance which entitled a party to a writ of error or an appeal, within this rule, must be *a direct and positive one,* effected by the judgment concluding and acting upon his rights; and *such damage must be by the record, and not in consequence of it.* . . .

(Italics mine.)

---

*Judge Edward P. Reed was a member of the Court of Appeals at the time oral argument was heard on this matter. He is now serving as a judge pro tempore of the Court pursuant to CAR 21(c).

Although the State has not challenged appellants' standing to appeal, jurisdiction cannot be lodged with this court by consent of the parties. *Terrill v. Tacoma,* 195 Wash. at 276. The appeal should be dismissed for lack of standing.[3]

The basis for the majority's decision is that it sees "no reason to limit the application of the [discovery] rule only to certain negligence cases." Majority, at 259. In my view, this is no reason at all and simply permits a sidestepping of the issue presented to this court. I believe there is every valid reason for not applying the discovery rule on the facts of this case. Because I also believe that the brief of respondent State of Washington has ably set forth those reasons, I will break precedent and adopt in haec verba portions of the State's argument, with supporting authorities, as my opinion in part. The State's argument follows:

> *The Discovery Rule Does Not Apply to This Case as a Matter of Law Because it Does Not Involve a Situation Where the Plaintiff Was Unaware of, or Could Not Discover in the Exercise of Due Diligence All of the Facts Essential to Her Cause of Action Within the Statutory Time Period.*

. . . .

No Washington court has addressed the issue of whether the discovery rule applies to a situation where the plaintiff's allegation is basically that she knew that she had been injured and knew who or what the cause of that injury was, but didn't know who, other than the actor who directly caused her injury, might be legally responsible for her injury. In previous discovery rule cases, the court has recognized that it was virtually impossible for a plaintiff to file an action within the statute of limitations either because they were unaware of the fact of injury, the cause of the injury or did not suffer actual damages until after the statute of limitations had run. *See* discussion, *infra.* Here the allegation is that plaintiff did not know the identity of the state as a defendant or alternatively that she did not know the state was legally responsible for the conduct of Larry Knox. Boiled down, appellants' contention is that although both appellants and the plaintiff had knowledge of facts sufficient to

---

[3]At the least, this court should raise the issue of standing to appeal and request supplemental briefs on that issue.

The appellants could have, but did not, seek review of the Superior Court's decision that the discovery rule applies to Hibbard's claims against them.

bring a cause of action against the state they did not know the state could be held liable based on those facts until the *Peterson* [*sic*] [*v. State,* 100 Wn.2d 421, 671 P.2d 230 (1983)] decision was widely publicized. . . .

> a. *The Discovery Rule is Not Applicable to the Present Case Because it is Based on Negligence and Does Not Present the Types of Hidden Injury or Unknown Factual Causation Problems Which Have Justified Imposition of the Rule Previously.*

Legislatures enact statutes of limitations in response to two basic policy considerations. First, there is the belief that at some point in time a party should be freed from the fears and burdens of threatened litigation. Second, the statutes recognize that as time goes by, memories fade, evidence disappears and claims become stale and are more likely to be spurious. As the Washington Supreme Court has said,

> "No civilized society could lay claim to an enlightened judicial system *which puts no limits on the time in which a person can be compelled to defend against claims brought in good faith,* much less whatever stale, illusory, false, fraudulent, or malicious accusations of civil wrong might be leveled against him." [Emphasis added.]

*Ruth v. Dight,* 75 Wn.2d 660, 664, 453 P.2d 631 (1969). Thus, statutes of limitations are enacted to compel the exercise of legal rights within a reasonable time, with the sanction for a failure to do so being a loss of the right to sue. Courts will ordinarily enforce the statutes strictly to effectuate the policies of the statutes. *Ruth, supra.* The U.S. Supreme Court has recognized the plea of limitations as a meritorious defense and cautioned that it should not be construed so as to defeat its obvious purpose which is to encourage the prompt presentation of claims. *United States v. Kubrick,* 444 U.S. 111, 62 L. Ed. 2d 259, 266, 267, 100 S.Ct. 352 (1979).

The statute of limitations operates on the premise that, "When an adult person has a justiciable grievance, he usually knows it and the law affords him ample time to assert it in the courts." *U.S. Oil v. Dept. of Ecology,* 96 Wn.2d 85, 633 P.2d 1329 (1981); *Ruth, supra* at 665. Thus, in an ordinary personal injury action, the general rule is that a cause of action accrues at the time the act or omission occurs. *Ruth, supra* at 666; [51] Am. Jur. 2d, *Limitations of Actions* §135, at 704 (1970). However, it has been recognized that in certain torts, *injured parties do not, or cannot, know they have been injured. White v. Johns–Manville Corp.,* 103 Wn.2d 344, 348, 693 P.2d 687 (1985).

To ameliorate the harshness of the statute of limitations in these situations, the judiciary has created the discovery rule to postpone the accrual of the cause of action. Under the discovery rule, a cause of action accrues with either the actual or imputed discovery of the essential elements of a cause of action. *Sahlie v. Johns–Manville [Sales] Corp.*, 99 Wn.2d 550, 555, 663 P.2d [473] (1983). However, the rule does not require knowledge of a legal cause of action. *Reichelt v. Johns–Manville [Corp.]*, 107 Wn.2d 761, 769, [733 P.2d 530] (1987). As was recognized in *Sahlie*, "a plaintiff may well be aware of the facts comprising the essential elements of the action without being aware that he has a legal cause of action." *Sahlie, supra* at 554.[4] Because the discovery rule is in derogation of the legislative intent behind statutes of limitations, it has been held to have limited application and must be narrowly construed. As stated by the court in *Metropolitan Services, Inc. v. Spokane*, 32 Wn. App. 714, 720, 649 P.2d 642, [*review denied*, 98 Wn.2d 1008] (1982):

> The general rule is a cause of action accrues and the statute of limitations begins to run when a party has the right to apply to the court for relief. . . The discovery rule is an exception. . . Under this rule, a cause of action accrues and the statute of limitations does not begin to run until the plaintiff learns of or should have learned of the facts which

---

[4]In *Gevaart v. Metco Constr., Inc.*, 111 Wn.2d 499, 502, 760 P.2d 348 (1988), the court adopted an opinion from Division One of this court containing the following language:

> Gevaart argues she assumed the slope which caused her fall was for drainage and that as of October 29, 1981, she had no knowledge of a possible professional negligence action against Hale or Metco. However, the discovery rule does not require knowledge of the existence of a legal cause of action. . . . To so require we would effectively do away with the limitation of actions until an injured person saw his/her attorney. . . . This is not the law.

The author of the majority recognizes, albeit reluctantly, that *Gevaart* is controlling. He states in *Richardson v. Denend*, 59 Wn. App. 92, 95–96, 795 P.2d 1192 (1990), a legal malpractice case, that:

> The discovery rule merely tolls the running of the statute of limitations until the plaintiff has knowledge of the "facts" which give rise to the cause of action; it does not require knowledge of the existence of a legal cause of action itself. *See Sahlie v. Johns–Manville Sales Corp.*, 99 Wn.2d 550, 554, 663 P.2d 473 (1983); *Reichelt v. Johns–Manville Corp.*, 107 Wn.2d 761, 769, 733 P.2d 530 (1987); *Gevaart v. Metco Constr., Inc.*, 111 Wn.2d 499, 502, 760 P.2d 348 (1988). In professional malpractice cases, the pivotal factor which tolls the running of the statute of limitations is the absence of knowledge of injury. *See Peters [v. Simmons]*, 87 Wn.2d [400, 552 P.2d 1053 (1976)] at 404; *Gevaart*, 111 Wn.2d at 501.

*See also Denend*, at 94 nn.2, 3.

give rise to the cause of action. . . However, the discovery rule has limited application. . . *In all cases in which it has been applied, the plaintiff has lacked the means or ability to ascertain a wrong has been committed.*

Washington courts have limited application of the rule to two fact patterns where the plaintiff is unable to ascertain that a wrong has been committed.

The first fact pattern is where the plaintiff does not know he has in fact been injured until sometime after the negligent act. In these cases, the plaintiff is unaware of the fact of injury either due to the injury being latent or because the plaintiff lacks knowledge of the injury until some other event aside from the defendant's negligence triggers the plaintiff's actual damages and consequently knowledge of the injury. These factual situations arise in two types of cases.

The first type of case in which the fact of injury problem arises is in the professional malpractice cases. The majority of Washington malpractice cases which have applied the discovery rule have involved plaintiffs who have either been unaware of the injury because of its latent nature or have had no reason to believe they were injured until some other damage causing event brought the injury and the defendant's negligence to his attention. For example, in *Ruth,* the defendant had left a sponge in a surgical incision made on the plaintiff. Although she experienced pain and discomfort over the years she had no reason to suspect that she had been injured by the doctor until an exploratory surgery some 22 years later revealed the sponge. *Ruth, supra* at 663. Thus, the discovery rule was applied to delay accrual of the cause of action until such time as the sponge was discovered. The common sense rationale of applying the rule in this situation is that a person cannot bring a cause of action until she knows she has been injured. (Citations omitted.)

A similar factual scenario occurs where the plaintiff is injured at the time of the negligence but is not aware of the injury until some later event causes him to suffer actual damage. For example, in *Gazija v. Nicholas Jerns Co.,* 86 Wn.2d 215, 217, 543 P.2d 338 (1975) the defendant had negligently cancelled the plaintiff's floater policy. This policy insured all of the equipment on the plaintiff's fishing boat. As long as the boat did not sink the cancellation of this policy was inconsequential and there would be no reason for the plaintiff to know it had been cancelled. Unfortunately, the boat did sink in March of 1970. *Id.* at 217. The court recognized that until the plaintiff suffered some actual and appreciable harm he did not have a cause of action. *Id.* at 219. The court therefore reasonably held that the cause of action did not accrue in 1966 when the policy was cancelled, but rather in 1970 when the plaintiff actually suffered damage as a result of that negligence. *Id.* at

223. *See also Peters v. Simmons,* 87 Wn.2d 400, 552 P.2d 1053 (1976); *Hunter v. Knight, Vale & Gregory,* 18 Wn. App. 640, 571 P.2d 212 (1977); *Kundahl v. Barnett,* 5 Wn. App. 227, 486 P.2d 1164 (1971); *Janisch v. Mullins,* 1 Wn. App. 393, 461 P.2d 895 (1969).

In every one of these malpractice cases the discovery rule was applied not because the plaintiff did not know who the defendant was, or that she did not know the defendant was legally responsible for her injury. *The rule was applied because the plaintiff did not know that he or she had in fact been injured. . . .* Turning to the present case, neither of the hidden injury rationales for applying the discovery rule to malpractice cases is applicable. The hidden sponge rationale does not apply as there is no question that the plaintiff knew on December 6, 1977 that she had been injured. Neither does the injury–actual damage rationale apply. The state's alleged negligence occurred on May 8, 1976 when Larry Knox was released (or arguably the alleged negligence was continuing assuming the probation supervision was negligent). In any event, the state is not arguing that the statute of limitations began running on May 8 or any time prior to the plaintiff's actual injury. However, just as in the cases cited, once the plaintiff suffered actual damage as a result of the state's alleged antecedent negligence, she had a cause of action and nothing remained to prevent her from bringing it in a timely fashion.

The second type of case where the fact of injury problem arises is where the defendant actively conceals the fact of injury from the plaintiff. Two Washington cases exemplify this theory. The first, *Kittinger,* was a libel case involving an employee who had been laid off in June of 1973 allegedly because of reductions in work forces. *Kittinger v. Boeing [Co.],* 21 Wn. App. 484, 485, 585 P.2d 812 (1978). In January of 1975, he heard rumors that led him to suspect there were other reasons for his termination. *Id.* However, his inquiries to Boeing management regarding other motives for termination were unsuccessful. *Id.* Finally, in June of 1975 Kittinger learned from a Boeing manager that another Boeing employee had made some defamatory statements about Kittinger in a memorandum. *Id.* at 486. He also learned that the company had made a decision "to sustain his ignorance of the charges against him." *Id.* Kittinger brought suit just short of two years, the statute of limitations for a libel action, after learning of the libelous memo. *Id.* The issue on appeal was whether the statute of limitations should run from the time of the libel or the time of the discovery of the existence of the memorandum. [T]he court held as follows:

We are convinced that the discovery rule is appropriate for libel cases which arise out of confidential business memoranda when the plaintiff has no means, in the exercise of

reasonable diligence, of discovering the existence of the cause of action. Because the memorandum remains with the libeller, the discovery rule is appropriate in this case just as in the case where a foreign substance is left in his body. In either case, the injured party cannot be expected to discover the tort until something else happens to arouse his suspicion. *Kittinger, supra* at 488.

The other Washington concealment case is *U.S. Oil v. Dept. of Ecology* which was a statutory penalty proceeding by the state against U.S. Oil, *U.S. Oil v. Dept. of Ecology,* 96 Wn.2d 85, 633 P.2d 1329 (1981). U.S. oil had a statutory duty to monitor and report its daily discharge of polluting effluents. For several years U.S. Oil discharged effluents in excess of its permitted amount, but did not accurately report this to DOE. *Id.* at 87. U.S. Oil argued that the two year statute of limitations had run and therefore DOE was barred from collecting penalties. DOE argued the discovery rule applied. The Supreme Court agreed with DOE stating:

Not applying the rule in this case would penalize the plaintiff and reward the clever defendant. Neither the purpose for statutes of limitations nor justice is served when the statute runs while the information concerning the injury is in the defendant's hands.

*U.S. Oil, supra* at 93–94.

Thus, the discovery rule is applied in concealment cases where the fact of injury is in the exclusive possession of the defendant and the defendant wrongfully conceals the fact of injury, the rationale being that the plaintiff could not have discovered his cause of action in the exercise of reasonable diligence. That rationale is not applicable to the present case. The fact of injury was not in the defendant state's exclusive possession and therefore, the state could not conceal the injury from the plaintiff. The plaintiff knew of her injuries at the time they occurred, December 6, 1977. Furthermore, the only evidence available shows that the state did not conceal the state's conduct. Cynthia Peterson had no problem in discovering the state's conduct and filing her action in a timely manner. *Peterson,* [sic] *supra.* Additionally, the appellants in the present case got Knox's records within three months of requesting them. Thus, all the facts necessary to bring an action against the state were either known or easily ascertainable at the time of the injury. There is no factual basis for applying the discovery rule in this case based on the active concealment rationale.

The second factual situation where the discovery rule is applied is when the plaintiff is justifiably unaware of the factual cause of his injury. This occurs primarily in the products liability and occupational disease cases. But, *see also Yerkes v. Rockwood Clinic,* 11 Wn. App. 936, 527 P.2d 689 (1974) (action for medical malpractice did not accrue until plaintiff knew

condition of weeping anus was caused by negligent severance of vagus nerve). It is significant to note that these are the only cases that deal with the plaintiff's lack of knowledge of causation and that they deal only with factual causation. A lack of knowledge of legal causation, as asserted by plaintiff in this case, has never been the basis for applying the discovery rule in Washington. As the Supreme Court has stated:

"[w]e believe its [the discovery rule] extension to products liability cases is especially reasonable when, as here, the challenged product is a medical one whose causal connection to injuries may not be discovered until well after the product has been in use."

*Ohler [v. Tacoma Gen. Hosp.,* 92 Wn.2d 507, 598 P.2d 1358 (1979)], *supra* at 514.

These cases recognized two common sense propositions. First, that where medicine and science do not recognize the factual connection it is unreasonable to expect the average layman to. *Ohler v. Tacoma General Hospital, supra* at 514. As the Supreme Court has recently said,

"Often the critical facts about causation may not be discoverable until several years after death [or injury as the case may be]."

*White, supra* at 354. Secondly, the rule recognizes that even if the connection may be suspected by science and medicine,

"it is unreasonable to expect or require, as a matter of law, the ordinary wrongful death claimant [or personal injury claimant] to initiate and conduct *the massive research necessary to prove the causal link* between occupational exposure and resulting cancer; such research takes numerous years and vast resources." [Emphasis added.]

*White v. Johns–Manville Corp.,* 103 Wn.2d at 355. However, even in these cases once the cause in fact and the fact of injury are known to the plaintiff the statute of limitations begins to run. *Reichelt v. Johns–Manville,* 107 Wn.2d 761, 770 (1987). The plaintiff will not be heard to argue that he did not know the defendant might be legally liable to him. This position was rejected in *Reichelt* where the court stated:

Mr. Reichelt would have us adopt a rule that would in effect toll the statute of limitations until a party walks into a lawyer's office and is specifically advised that he or she has a legal cause of action; that is not the law. A party must exercise reasonable diligence in pursuing a legal claim.

*Reichelt, supra* at 772.

The case at issue does not fit into this final rationale for applying the discovery rule. The products liability cases stand for the proposition that the discovery rule should be applied where the plaintiff is unaware of factual causation or cannot prove factual causation sufficient to impose liability. Neither of these problems is present in this case, plaintiff knew Larry

Knox was a released mental patient and his status as a probationee was easily ascertainable. If Knox had not been released, or had been properly supervised, the plaintiff's injuries would not have occurred. Thus, there was no problem in ascertaining the factual connection between the state's conduct and the plaintiff's injury. Nor would any unreasonable burden or expense be imposed on the plaintiff in proving causation. Any problems the plaintiff would have had in proving causation would have been because of legal causation. In fact, appellants' position is best summarized by appellant Thomas's assertion that, "neither plaintiff nor appellants knew that Dr. Miller was responsible for the conduct of Larry Knox on December 6, 1977 until the *Peterson* [*sic*] decision was announced in 1983." . . . This is not an appropriate basis for applying the discovery rule as it was the very argument rejected by the court in *Reichelt*.

There being no valid rationale for applying the discovery rule to this case the judgment of the trial court should be affirmed.

b. *Federal Courts Which Have Considered the Issue of Whether the Plaintiff's Lack of Knowledge of the Defendant's Identity Should be a Basis for Applying the Discovery Rule Have Rejected the Appellant's Position and Refused to Apply the Discovery Rule.*

Federal courts which have considered extending the discovery rule beyond cases where the plaintiff either lacks knowledge of the fact of injury or causation have refused to do so. These courts have recognized that the policy underlying the statute of limitations would be defeated and the statute rendered meaningless, if the rule were extended to apply to ordinary torts. In *Kubrick,* the U.S. Supreme Court assumed that the accrual of an action was delayed until the plaintiff learned of the injury's existence and its cause. *United States v. Kubrick,* 444 U.S. 111, 121, 62 L. Ed. 2d 259, 100 S. Ct. 352 (1979). The court then addressed the issue of whether accrual of the cause of action should be delayed until the plaintiff discovers that the defendant's conduct is legally blameworthy. The court had this to say:

We are unconvinced that for statute of limitations purposes a plaintiff's ignorance of his legal rights and his ignorance of the facts of his injury or its cause should receive identical treatment. That he has been injured in fact may be unknown or unknowable until the injury manifests itself; and the facts about causation may be in the control of the putative defendant, unavailable to the plaintiff or at least difficult to obtain. The prospect is not so bleak for a plaintiff in possession of the critical facts that he has been hurt and who has

inflicted the injury. He is no longer at the mercy of the latter. There are others who can tell him if he has been wronged, and he need only ask.

*Kubrick,* 444 U.S. at 122.

The Ninth Circuit has followed this rationale in a number of cases where the plaintiff alleged that he did not know of the government's negligence at the time of his injury. In *Davis,* the plaintiff contracted polio from a polio vaccination. He sued the manufacturer but did not learn of the possibility that the government had been negligent in testing the vaccine until almost 10 years after he contracted polio. *Davis v. U.S.,* 642 F.2d 328 (9th Cir. [1981]). In rejecting plaintiff's contention that his cause of action against the government did not accrue until he discovered their negligence the Ninth Circuit stated:

> With knowledge of the fact of injury and its cause the malpractice plaintiff is on the same footing as any negligence plaintiff. *The burden is then on plaintiff to ascertain the existence and source of fault within the statutory period.* It follows that diligence or lack of diligence in these efforts are irrelevant. In the absence of fraudulent concealment it is plaintiff's burden within the statutory period, to determine whether and whom to sue. *Kubrick* makes this plain. [Emphasis added.]

*Davis, supra* at 331.

Similarly, in *Dyniewicz v. U.S.,* the Ninth Circuit held that the plaintiff's action for wrongful death accrued at the time of death and not at the time the plaintiff discovered the government's involvement. *Dyniewicz v. U.S.,* 742 F.2d 484 (1984). [I]n rejecting the plaintiff's contention the court stated:

> Discovery of the cause of one's injury, however, does not mean knowing who is responsible for it. The "cause" is known when the immediate physical cause of the injury is discovered. . . Appellants knew both the fact of injury and its immediate physical cause, the flooded highway, when the bodies of Mr. and Mrs. Dyniewicz were found. The cause of action accrued at that time. Their ignorance of the involvement of United States employees is irrelevant.

*Dyniewicz, supra* at 486–87.

The Seventh Circuit has also refused to apply the discovery rule in a case where the plaintiff's contention was that he was not aware that the negligence of a United States government employee was the cause of his injury. [I]n *Steele v. U.S.,* [599 F.2d 823 (7th Cir. 1979)] the plaintiff had been electrically shocked, while installing runway lights, as the result of the failure of an FAA employee to turn off the power to the lights. The plaintiff alleged that his cause of action did not accrue against the government until he discovered that the FA[A] controlled the flow of power to the lights. In rejecting his contention the court stated:

Regardless of the correctness of the relaxed discovery rule in medical malpractice cases, we do not believe that the refinement of the discovery rule should govern when a claim accrues for a more ordinary tort such as the one suffered by the plaintiff here. . . The governing rule is that when the injury coincides with the negligent act and some damage is discernible at that time, the cause of action accrues and the statute of limitations begins to run immediately. Because the injury is apparent, it is the duty of the victim of the tort to discover the negligent acts and file a claim. . .

*Steele v. U.S.,* 599 F.2d 823, 828 (7th Cir. 1979).

The most analogous case to the present one and one relied upon by the trial court is *Zeleznik v. U.S.,* 770 F.2d [20] (3rd Cir. 1985).[5] In *Zeleznik,* an illegal alien had gone to Immigration and Naturalization Services (INS) to turn himself in. INS allowed him to leave and subsequently he killed the plaintiff's son in 1974. The plaintiff first learned of INS's involvement in 1982 and brought suit against INS for negligently releasing him at that time. Refusing to apply the discovery rule on behalf of the plaintiffs, the court held that the claim accrues when the injured party knows of the injury and its immediate cause not when the injured party learns of the government's involvement. *Zeleznik, supra* at 23. The following passage from the court's opinion is illuminating in light of the similarity to the present case.

In the present case, at the time of their son's death, the Zelezniks knew of the immediate cause of his death, the act of Vernal Walford. They, however, did not know of the alleged negligent participation of INS. They argue that the rule in *Kubrick* ought to be extended so that the cause of action against INS should not have accrued until they obtained knowledge of INS' alleged involvement. Several courts of appeal have rejected similar contentions.

*Zeleznik, supra* at 23. The court held that the plaintiffs' lack of knowledge as to the government's involvement was not sufficient to invoke the discovery rule absent concealment. *Id.* at 23.

The federal cases illustrate that the allegation of appellants and plaintiff that they did not know the identity of the state or that the state could be sued as a result of Larry Knox's conduct is not sufficient to invoke application of the discovery rule. Once the plaintiff was injured by Larry Knox she, just as the Zelezniks, had sufficient information at that time to bring a cause of action against the state. As the Ninth Circuit said,

---

[5]In my view, the trial court correctly placed special emphasis upon the *Zeleznik* case in ruling that the discovery rule did not apply to Hibbard's claims against the State.

"knowing the cause of one's injury does not mean knowing who is responsible for it." There being no fraud of concealment on the part of the state in this case there is no reason to apply the discovery rule.

It should be readily apparent that the appellate courts of this state have taken great pains and employed extreme caution in carving out exceptions for application of the discovery rule. Neither court has applied the rule willy-nilly to any case of negligent tort simply because it might be difficult to ferret out all who were at fault. The majority's rationale pales when compared with the laborious analysis of Judge Horowitz in *Janisch v. Mullins,* 1 Wn. App. 393, 461 P.2d 895 (1969), where Division One of this court extended the rule of *Ruth v. Dight, supra* (sponge in the abdomen) to cases of misdiagnosis.

Because I believe so strongly that the discovery rule does not apply to the facts of this case, I will not address the issue of Dillard's diligence as a question of fact, except to say that here the majority also errs.[6]

---

[6]The trial court could not have erred in dismissing the Hibbard estate's claims when nothing was presented regarding the knowledge of the bank or its attorneys. The only evidence before the court was Heidi Hibbard's personal affidavit. She did not become personal representative until she reopened the estate— long after the statute had run. In the absence of additional evidence, the trial court had no choice as respects the estate's claims.

In my view, even though the State fails to refute it, we cannot accept out of hand the appellant's assertion that:

For convenience, and for purposes of this appeal, discussion herein of Heidi's awareness or lack thereof of possible causes of action against the State includes PSNB's, Gordon Thomas', and E.M. Murray's awareness or lack thereof of any possible causes of action against the state.

Brief of Respondent Puget Sound National Bank, at 11.

Trial counsel for Gordon, Thomas recognized this, as is apparent from her remarks at the summary judgment hearing:

The question is not whether Heidi Hibbard knew at the time in 1977 whether or not there was a cause of action. The question is did the PR know, or should have known of the cause of action . . ..

I think the question here, *which has not been brought before the Court, there are no facts before the Court,* is what did the personal representative know? What was the state of the law at that time, and what was the proper action to take? And none of this is before us.

(Italics mine.) Report of Proceedings, at 19–21.

I reiterate, neither Heidi nor the estate has appealed.

For the reasons set forth above, I would affirm the trial court's dismissal of the State of Washington.

Review granted at 116 Wn.2d 1023 (1991).